# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **WASHINGTON COUNTY BOARD OF EDUCATION,**<br><br>    Plaintiff,<br><br>v.<br><br>**MALLINCKRODT ARD, INC.,** *et al.*<br><br>    Defendants. | **Case No. 1:19-cv-1854** |

## DEFENDANT MALLINCKRODT ARD INC. AND MALLINCKRODT PLC'S MEMORANDUM IN LAW AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT PURSUANT TO RULE 12(b)(6)

# **TABLE OF CONTENTS**

Page

INTRODUCTION .................................................................................................................. 1

PROCEDURAL HISTORY.................................................................................................... 3

ALLEGATIONS IN THE AMENDED COMPLAINT ......................................................... 4

DISCUSSION ......................................................................................................................... 6

    I.    Overview of Federal Pleading Standards.................................................................. 6

        A.    To Survive a Motion to Dismiss, Plaintiff's Allegations Must Be Grounded in Actual Facts and State a "Plausible" Claim for Relief. ........................................................................................................ 6

        B.    Plaintiff May Not Assert Cursory or Self-Contradictory Factual Allegations to Avoid Dismissal. ......................................................... 7

    II.    Plaintiff's Amended Complaint Fails to Properly Plead the Elements of Any of its Claims and Should Be Dismissed With Prejudice in its Entirety as to Mallinckrodt........................................................................................................... 7

        A.    Plaintiff's "Shotgun Pleading" is Impermissible and Fails to Comply with Fed. R. Civ. P. 8(a). ............................................................. 7

        B.    Plaintiff Does Not Plead a Cognizable Claim under the Maryland Consumer Protection Act, Md. Code Ann., Com. Law § 13-101, et seq. (Count I). ............................................................... 8

            1.    There is no unfair or deceptive practice or misrepresentation by Mallinckrodt. ............................................... 9

            2.    There is no allegation of reliance by Plaintiff (or its beneficiaries). ............................................................................ 10

        C.    Plaintiff Fails to Sufficiently Plead a Claim for Negligent Misrepresentation (Count II)..................................................................... 12

        D.    Plaintiff's Fraud Claim (Count III) Fails to Meet the Particularity Requirements under Fed. R. Civ. P. 9................................. 14

        E.    Plaintiff Claim for Unjust Enrichment (Count IV) Warrants Dismissal as Plaintiff Fails to Plead Several Elements of the Claim.............................................................................................................. 16

      F.      Plaintiff Fails to Plead a Cognizable Claim for Conspiracy to Defraud/Concerted Action (Count V) .......................................................... 16

CONCLUSION ................................................................................................................ 17

Defendants Mallinckrodt ARD Inc. and Mallinckrodt plc (collectively, "Mallinckrodt"), by and through their undersigned counsel, hereby file this Memorandum of Law in Support of their Motion to Dismiss with Prejudice the Amended Complaint ("Complaint") filed against Mallinckrodt by Plaintiff Washington County Board of Education ("Plaintiff"). In support, Mallinckrodt states as follows:

## INTRODUCTION

This case is yet another in a series of cases attempted by Plaintiff's lead counsel complaining about the price of Mallinckrodt's specialty drug, Acthar. Counsel is fishing for a theory that sticks. The initial suit, filed in April 2017, is a sweeping putative class action on behalf of third party payors, just like this Plaintiff, initially alleging federal and state antitrust claims, federal RICO claims, and a variety of other state law claims. *City of Rockford v. Mallinckrodt ARD, Inc.*, No. 17-cv-50107 (N.D. Ill.). After two amendments to that complaint, the *Rockford* court dismissed all claims except for the federal and state antitrust claims. 360 F. Supp. 3d 730, 776-77 (N.D. Ill. Jan. 25, 2019). Included among the dismissed state law claims were fraud, negligent misrepresentation, conspiracy, unjust enrichment, and consumer protection claims, some virtually identical to those brought here. *Id.*

All of these cases are based on the same underlying factual allegations, primarily that: (1) in 2007 Mallinckrodt's predecessor, Questcor, entered a well-publicized contract with Express Scripts entities to act as the exclusive distributor of Acthar; and (2) Mallinckrodt purchased the rights to a potentially competitive product, one that was not approved for use in the United States. Plaintiff alleges that those actions enabled Defendants to "intentionally and artificially inflat[e] the costs of Acthar" and that they concealed "from Plaintiff the true costs for Acthar."

1

Am. Compl. ¶ 10. However, the factual recitations change somewhat to fit the theory of the particular case.

In an effort to state consumer protection claims under Maryland law, Plaintiffs have categorized their allegations as three "schemes." First, Plaintiffs allege a "Distribution Scheme" whereby "Mallinckrodt changed the way it distributed and sold Acthar" by limiting distribution to just one distributor. Am. Compl. ¶ 18. Second, Plaintiffs allege a "Pricing Scheme" whereby Mallinckrodt "willfully manipulated and inflated the prices" for Acthar despite the drug's "very limited uses and benefits and an unknown mode of action." Am. Compl. ¶ 20. And, third, Plaintiff alleges a "Marketing Scheme" whereby Mallinckrodt "brib[ed] doctors in order to induce them to prescribe Acthar over other available treatments." Am. Compl. ¶ 21. Mallinckrodt also allegedly "cultivat[ed] key opinion leaders" to "serve as 'spokes-doctors'" and promote Acthar for off-label usage based on false clinical data. Am. Compl. ¶ 18. Altogether, in Plaintiff's words, the three "schemes" are "the hallmarks of an overarching scheme to raise Acthar prices." Am. Compl. ¶ 122. Again, the allegations boil down to a grievance about high prices.

At its root, Plaintiff's chief complaint is that starting in 2016, Plaintiff allegedly paid (on behalf of its employees) more for Acthar than Plaintiff now thinks it is worth. Critically, Plaintiff makes these allegations while also admitting that Acthar was prescribed by the patients' physicians and approved by Plaintiff's Pharmacy Benefits Manager ("PBM"), professionals who presumably believed that the drug was effective and approved the payment of the price being paid. Moreover, there are no allegations that the doctors who prescribed the drug to Plaintiff's beneficiaries were influenced by the three "schemes" or the recipients of any bribes. Further, notwithstanding its allegations of rampant unfair and deceptive conduct by Defendants, Plaintiff,

with that knowledge, continues to pay for Acthar today. Am. Compl. ¶ 147 (Plaintiff "has not stopped paying [for Acthar] since due to Mallinckrodt's continued marketing effort, and the Express Scripts Entities' substantial assistance through its hub.")

While the Complaint is lengthy and contains a wide variety of disconnected and disparaging allegations about Defendants and others, it lacks the necessary allegations to support claims under Maryland law. While Plaintiff tries to present Mallinckrodt's Acthar business as a combination of various unlawful schemes, beneath the accusatory language, the Amended Complaint describes ordinary practices of a drug manufacturer with a typical sales and marketing approach. The pharmaceutical industry is unique, and high drug prices are not uncommon.

As further detailed below, the rambling Amended Complaint, much like the original Complaint, fails to state claims under the Maryland Consumer Protection Act or for negligent misrepresentation, unjust enrichment, fraud, or conspiracy to defraud against Mallinckrodt or other Defendants. The Amended Complaint should be dismissed in its entirety with prejudice.

## PROCEDURAL HISTORY

Plaintiff filed this case on May 21, 2019, in the Circuit Court for Washington County, Maryland. On June 24, 2019, Mallinckrodt filed its Notice of Removal, which was joined in by all Defendants. ECF No. 1. Pursuant to Federal Rule of Civil Procedure 81, Mallinckrodt filed its Motion to Dismiss the original Complaint on July 1, 2019. ECF No. 25. Rather than filing a timely reply to Mallinckrodt's Motion to Dismiss, on July 17, 2019, Plaintiff filed an Amended Complaint with this Court alongside a Motion for Remand. ECF Nos. 34, 36. The majority of the Amended Complaint is identical to the original complaint.

## **ALLEGATIONS IN THE AMENDED COMPLAINT**

Plaintiff alleges that Mallinckrodt acquired the rights to H.P. Acthar Gel ("Acthar") from Questcor in 2014 and has continued to manufacture, distribute, and market Acthar since the acquisition. Am. Compl. ¶ 42.  Acthar is a "specialty pharmaceutical" distributed only through specialty pharmacy distributors" and "specialty pharmacy providers." ¶ 11.  Acthar is the only therapeutic ACTH product sold in the United States.  ¶ 5. Accordingly, Plaintiff alleges that Mallinckrodt is a monopolist in the purported market for ACTH drugs. *Id*. Plaintiff also alleges that in 2013 Questcor purchased the rights to develop, market, and sell a potentially competitive drug, Synacthen Depot ("Synacthen"), to maintain its monopoly in the purported ACTH market and supposedly never sought FDA approval for the drug. ¶ 256.

Starting in 2007, Mallinckrodt's predecessor, Questcor, embarked on a "new strategy" which involved changes to distribution, pricing, and marketing of Acthar. ¶ 24. Plaintiff alleges this strategy involved limiting the distribution through Express Scripts's CuraScript SD to form an exclusive distribution arrangement.  ¶ 14. This arrangement includes a patient support program "Acthar Support and Access Program" ("ASAP") which is operated by co-defendant UBC. When Acthar is prescribed by a physician for a patient, "UBC confirms the prescription … with a specialty pharmacy … UBC then confirms the patient's insurance coverage or other source of payment … UBC then arranges for Acthar to be delivered directly to the patient by CuraScript [SD]." ¶ 149. Services under the patient support program are initiated through the ASAP form. Am. Compl. Ex. A. Plaintiffs allege this constitutes a "Distribution Scheme." Am. Compl. ¶ 15.

Next, Plaintiff alleges that Mallinckrodt "willfully manipulated and inflated" the prices for Acthar. Am. Compl. ¶ 17. And, Defendants jointly agreed to "raise and fix" the average

4

wholesale price for the drug and that the price of Acthar increased from $40 per vial in 2001 to over $45,000 per vial in 2015. ¶¶ 25, 179, 376. Plaintiff further alleges that in connection with this exclusive distribution arrangement, "both companies would share the financial rewards of the Acthar monopoly through exorbitantly higher prices." ¶ 14. Plaintiffs allege such conduct constitutes a "Pricing Scheme." Am. Compl. ¶ 17.

Plaintiff also contends that Acthar has "limited clinical data, lack of proven efficacy and unknown mode of action" and that Mallinckrodt has "misrepresented to the public the 'value' for Acthar," ¶ 118, including through a "Marketing Scheme" ¶ 18. Specifically, Plaintiff alleges that Mallinckrodt used "key opinion leaders" to cultivate prescribers of Acthar by creating false clinical data about the drug and its off-label uses and disseminating such data to doctors. *See, e.g.*, ¶¶ 18, 133. Plaintiff further alleges that Mallinckrodt "deployed" "highly trained sales employees … to speak with doctors about the safety and efficacy of Acthar for unapproved uses and doses. ¶ 264.

Plaintiff further contends "part of Mallinckrodt's long term business strategy [is] to promote the administration of Acthar as a maintenance medication for all indications where it is approved only for the treatment of acute episodes or exacerbations of the disease." ¶ 120. Specifically, Plaintiff claims that Mallinckrodt has "falsely and misleadingly promoted the sale of Acthar for the long-term treatment of rheumatic disorders, including rheumatoid arthritis, which marketing far exceeds the approved indication." *Id.* At various points, Plaintiffs contend that Mallinckrodt and UBC worked together pursuant to the above-described schemes. *See, e.g.*, Am. Compl. ¶ 100.

Plaintiff provides a health plan to its employees, and certain of its beneficiaries were prescribed Acthar to treat rheumatoid arthritis. ¶¶ 36, 319. Plaintiff alleges that its

"beneficiaries dealt with Cigna's [specialty pharmacy] Tel-Drug for their fulfillment of Acthar." ¶ 164. In connection with the prescriptions for its beneficiaries, Plaintiff claims to have spent over $2 million for Acthar between 2016 and 2018. ¶ 37.  Plaintiff began reimbursing for these prescriptions in 2016, and "has not stopped paying [for Acthar] since." ¶ 147.

## DISCUSSION

### I. Overview of Federal Pleading Standards

#### A. To Survive a Motion to Dismiss, Plaintiff's Allegations Must Be Grounded in Actual Facts and State a "Plausible" Claim for Relief.

"Even though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim made against him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints."  *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009).  "To discount such unadorned conclusory allegations, 'a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'"  *Id.* at 193 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009)).  "This approach recognizes that 'naked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'"  *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). "At bottom, determining whether a complaint states on its face a plausible claim for relief and therefore can survive a Rule 12(b)(6) motion will 'be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  *Id.* (quoting *Iqbal*, 556 U.S. at 679).

### B. Plaintiff May Not Assert Cursory or Self-Contradictory Factual Allegations to Avoid Dismissal.

Merely including a purported "fact" within a complaint does not save a claim from dismissal. A court considering a motion to dismiss under Rule 12(b)(6) "need not accept … conclusory factual allegations devoid of any reference to actual events." *Solomon v. Capital One Bank USA*, No. GJH-14-03638, 2014 WL 7336694, at *2 (D. Md. Dec. 19, 2014); *Ramos v. Bank of America, N.A.*, No. DKC 11-3022, 2012 WL 5928732, at *3 (D. Md. Nov. 26, 2012). Furthermore, "[w]hen a complaint contains inconsistent and self-contradictory statements, it fails to state a claim." *Ramos*, 2012 WL 5928732, at *4; *see also Saravia v. Select Portfolio Servicing, Inc.*, No. 1:13-cv-01921-RDB, 2014 WL 2865798, at *7 (D. Md. June 23, 2014) ("With contradictory factual allegations, the Court cannot find a claim with 'facial plausibility' under the standards as set forth in *Iqbal*.").

## II. Plaintiff's Amended Complaint Fails to Properly Plead the Elements of Any of its Claims and Should Be Dismissed With Prejudice in its Entirety as to Mallinckrodt.

### A. Plaintiff's "Shotgun Pleading" is Impermissible and Fails to Comply with Fed. R. Civ. P. 8(a).

In drafting a complaint, Rule 8 of the Federal Rules of Civil Procedure requires a "short and plain statement of the claim." Here, Plaintiff's 100-plus page Amended Complaint is neither short nor plain, and thus fails to comply with the rule. This Court has often dismissed complaints which fail to comply with Rule 8. *See, e.g.*, *Arnold v. CitiMortgage, Inc.*, 578 F. Supp. 2d 801, 803–04 (D. Md. 2008) ("The numerous complaints filed by the Plaintiffs are neither short nor plain. They are inconsistent, confusing, overlapping and laced with vitriol and venom, entirely inappropriate for inclusion in a complaint before this Court….Plaintiffs have a great deal to say, But it seems they skipped Rule 8(a), Their Complaints are too long, Which renders them wrong, Please re-write and file within thirty days."); *Sloan v. Ally Fin. Inc.*, GJH-

18-1979, 2019 WL 224924, at *2 (D. Md. Jan. 15, 2019), *appeal dismissed*, 767 F. App'x 557 (4th Cir. 2019)(unpublished) (granting defendant's motion to dismiss for failure to comply with Rule 8 when the Complaint's allegations were "difficult to understand, contained in various documents attached to the Complaint, and replete with legal statements and conclusions").

Essentially, the Amended Complaint here is a shotgun pleading, bringing claims against multiple defendants with wide-ranging factual allegations, often lodged against "Defendants" collectively. This tactic presents an obvious scattershot approach to pleading which this Court has previously rejected. *See Rufus v. Seneca Mortg. Servicing, LLC*, No. 17-cv-351, 2017 WL 2591528, at *2 (D. Md. June 14, 2017) (shotgun pleading is one which 'fails to articulate claims with sufficient clarity to allow the defendant to frame a responsive pleading . . . or [one in which] it is virtually impossible to know which allegations of fact are intended to support which claims for relief.'" (citation omitted) (alterations in original); *Sewraz v. Morchower*, No. 08-cv-100, 2009 WL 211578, at *1 (E.D. Va. Jan. 28, 2009) (dismissing complaint as "shotgun pleading" because it "is thirty-five pages long and names ten defendants in sixteen separate causes of action . . . [and s]uch overly inclusive allegations make it difficult to determine which facts support which cause of action").

### B. Plaintiff Does Not Plead a Cognizable Claim under the Maryland Consumer Protection Act, Md. Code Ann., Com. Law § 13-101, et seq. (Count I).

This Court should dismiss Count I of Plaintiff's Amended Complaint as it fails to state a claim under the Maryland Consumer Protection Act (the "MCPA"). To state a claim under the MCPA, a plaintiff "must allege (1) an unfair or deceptive practice or misrepresentation that is (2) relied upon, and (3) cause them actual injury." *Stewart v. Bierman*, 859 F. Supp. 2d 754, 768 (D. Md. 2012) (citing *Lloyd v. Gen. Motors Corp.*, 916 A.2d 257 (Md. 2007)), *aff'd*, 528 F. App'x 297 (4th Cir. 2013) . Furthermore, this claim is subject to a heightened pleading standard. *See*

8

*Haley v. Corcoran*, 659 F. Supp. 2d 714, 724 (D. Md. 2009) (heightened pleading standard for MCPA claims).

> *1.   There is no unfair or deceptive practice or misrepresentation by Mallinckrodt.*

MCPA enumerates specific conduct which constitutes a violation of the statute. None of the conduct or "schemes" alleged by Plaintiff falls within § 13-101. In other words, Plaintiff does not allege an actionable unfair or deceptive practice or misrepresentation in connection with purchases of Acthar—much less with requisite specificity.[1] Plaintiff alleges (in largely conclusory fashion) that Defendants violated the MCPA by "deception, fraud, false pretense, false premise, misrepresentation, knowing concealment, suppression, and/or omission of material facts relating to the appropriate, medically-approved uses and benefits of Acthar." Am. Compl. ¶ 395. For example, "Mallinckrodt has repeatedly and consistently misrepresented to the public the 'value' of Acthar for specific indications, including the rheumatoid arthritis for which Plaintiff's beneficiaries were prescribed Acthar." ¶ 118. Plaintiff alleges that "the continued promotion of the use of Acthar for the long-term treatment of rheumatoid arthritis is false, misleading and deceptive." ¶ 338. And that, "[h]ad Defendants disclosed the truth about Acthar, including its limited uses and benefits, and the real reasons for its exorbitant pricing, Plaintiff would not have paid the prices it did for Acthar." ¶ 397. The Amended Complaint includes sweeping and conclusory allegations without the necessary particulars.

The allegations underlying the MCPA claim, specifically those referring to a "Marketing Scheme," are similar to those in *Moczulski v. Ferring Pharmaceuticals, Inc.,* 2018 WL 3496433 (D. Md. July 20, 2018). In *Moczulski*, the plaintiff comparably alleged that Defendant

---

[1] And, notwithstanding Plaintiff's grievances about anticompetitive conduct, a purported antitrust violation cannot support an MCPA claim. *See Davidson v. Microsoft Corp.*, 792 A.2d 336 (Md. Ct. Spec. App. 2002).

"intentionally failed to provide accurate information to the plaintiff and it intentionally provided false information about the effectiveness of the drug." *Id.* at * 8. And that, "[b]y selling to the plaintiff a drug that was not viable or effective, the defendant engaged in an unfair and/or deceptive trade practice in violation of § 13-301 *et seq.* of the Maryland Consumer Protection Act." *Id.* The Court in *Moczulski* found that the plaintiff failed to "allege what specific false statements Defendant made, where or when they were made, or by whom." *Id.* Ultimately, the Court held that such general allegations failed to support an MCPA claim and other fraud-based claim. *Id.* Here too, Plaintiff's allegations lack the requisite specificity to survive a motion to dismiss.

To the extent Plaintiff relies on the alleged "Distribution Scheme" or "Pricing Scheme" as a basis for its MCPA claim, those allegations likewise fail to constitute unfair or deceptive trade practices. These grievances about an exclusive distribution arrangement stem from anticompetitive concerns and do not raise consumer protection issues. For example, Plaintiff alleges "Mallinckrodt agreed with CuraScript and UBC to raise the average wholesale prices." Am. Compl. ¶ 17. Essentially, this is an allegation of price-fixing. Elsewhere, Plaintiff alleges "Mallinckrodt was able to enhance its monopoly power and to raise its Acthar prices above competitive prices" through its distribution arrangement with Express Scripts. Am. Compl. ¶ 382. But, purported antitrust violations cannot support an MCPA claim. *See Davidson v. Microsoft Corp.*, 792 A.2d 336 (Md. Ct. Spec. App. 2002).

2. *There is no allegation of reliance by Plaintiff (or its beneficiaries).*

Even if such generalized allegations could evidence an unfair or deceptive practice or misrepresentation, Plaintiff alleges no reliance upon Mallinckrodt's actions, which is fatal to its claims. *See Farwell v. Story*, 2010 WL 4963008, at *9 (D. Md. Dec. 1, 2010) ("absent an allegation of reliance" a claim under the MCPA must be dismissed); *Green v. Wells Fargo Bank,*

10

*N.A.*, 927 F. Supp. 2d 244, 257 (D. Md. 2013), *aff'd,* 582 F. App'x 246 (4th Cir. 2014) ("Because Plaintiffs have failed to show that they relied on Defendant's alleged misrepresentations to their detriment, their claims under the MCPA, for common law fraud, and for promissory estoppel will be dismissed.").

"A consumer relies on a misrepresentation when the misrepresentation substantially induces the consumer's choice." *Currie v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 788, 796 (D. Md. 2013). Here, despite complaining about the price, efficacy, and "unknown mode of action" of Acthar, Plaintiff does not allege that it (or its beneficiaries) relied on any particular action or statements made by Mallinckrodt as a basis for purchasing or using the drug. Instead, Plaintiff complains more generally that "as a result of Mallinckrodt's promotional effort, instead of treating Plaintiff's beneficiaries for acute exacerbations, or flare-ups, they have been treated with Acthar as maintenance medication with no hope for an end in sight." ¶ 319. Any suggestion of reliance on an improper "marking scheme" is implausible and not supported by Plaintiffs' own allegations.[2]

Critically, Plaintiff alleges it continues to pay for Acthar today, which totally undercuts its allegations that it was deceived or defrauded in any material way to purchase Acthar. *See Farwell v. Story*, 2010 WL 4963008 ("complicit or willing purchaser" cannot establish reliance under the MCPA). Plainly if it were deceived or if the medicine was not as effective as promised,

---

[2] Maryland law recognizes the "learned intermediary" doctrine, which generally limits liability of a drug manufacturer in the products liability context. *See Ames v. Apothecon, Inc.*, 431 F. Supp. 2d 566, 572 (D. Md. 2006). The rationale supporting this "learned intermediary" rule "is that only health-care professionals are in a position to understand the significance of the risks involved and to assess the relative advantages and disadvantages of a given form of prescription-based therapy." *Rite Aid Corp. v. Levy-Gray*, 391 Md. 608, 894 A.2d 563 (2006). This rationale against liability for Mallinckrodt applies here too.

it would have stopped buying this valuable medication when it became aware of the supposed fraud, but it did not. This is devastating to all of Plaintiff's fraud based claims.

Moreover, it is well recognized that "it is the *physicians* who make the ultimate decision on whether to prescribe the drug." *Rite Aid Corp. v. Levy-Gray*, 391 Md. 608, 633 (2006) (quoting *In re Rezulin Prods. Liab. Litig.,* 133 F. Supp. 2d 272 (S.D.N.Y. 2001)) (emphasis added). As opposed to Plaintiff's beneficiaries, "only health-care professionals are in a position to understand the significance of the risks involved and to assess the relative advantages and disadvantages of a given form of prescription-based therapy." *Rite Aid Corp. v. Levy-Gray* (quoting Restatement (Third) of Torts: Prod. Liab. § 6 (1998)). For this reason "patients *rely on physicians* in purchasing a prescription drug." *Id.* at 633 (emphasis added). Here, Plaintiff's beneficiaries relied on their physicians, and not on any act, omission, or misrepresentation by Mallinckrodt. Despite accusatory language about "key opinion leaders" or "spokes-doctors," Plaintiff does not allege that any physicians which prescribed Acthar to its beneficiaries were given "bribes" or otherwise improperly influenced by the alleged misconduct of Mallinckrodt. Accordingly, Plaintiff paid for the drug because its beneficiaries were prescribed Acthar, and the payment for the drug was approved by Plaintiff and its PBM.

### C. Plaintiff Fails to Sufficiently Plead a Claim for Negligent Misrepresentation (Count II).

This Court should dismiss Count II of Plaintiff's Amended Complaint as it fails to plead a claim for negligent misrepresentation. To state a claim for negligent misrepresentation under Maryland law, Plaintiff must plead the following elements: (1) the defendant, owing a duty of care to the plaintiff, negligently asserts a false statement; (2) the defendant intends that his statement will be acted upon by the plaintiff; (3) the defendant knows that the plaintiff will probably rely on the statement, which, if erroneous, will cause loss or injury; (4) the plaintiff,

justifiably, takes action in reliance on the statement; and (5) the plaintiff suffers damage proximately caused by the defendant's negligence. *Balfour Beatty Infrastructure, Inc. v. Rummel Klepper & Kahl, LLP*, 155 A.3d 445, 457-58 (Md. 2017).

"Maryland courts have long emphasized that to establish the first element of a negligent misrepresentation claim, a plaintiff must allege a duty that is independent of any contractual obligation." *Steven B. Snyder, M.D., P.A. v. Cynosure, Inc.*, No. CV RDB-18-2049, 2019 WL 1386727, at *5 (D. Md. Mar. 27, 2019); *see, e.g.*, *Martin Marietta Corp. v. Int'l Telecomms. Satellite Org.*, 991 F.2d 94, 98 (4th Cir. 1992). Here, Plaintiff fails to plausibly allege any duty of care owed to it by Mallinckrodt (or any other defendant).

Plaintiff points to the ASAP form as the basis for a duty owed by Mallinckrodt. Am. Compl. ¶ 402. But, its conclusory allegations do not evidence any duty stemming from a form filled out by a patient or its physician. While Plaintiff claims the form somehow constitutes an intervention in Plaintiff's treatment decision, this is contradicted by the language of the form itself. *See* Am. Compl., Ex. A. The form simply includes a certification to be signed by the prescribing physician regarding the need for the drug after the drug has been prescribed. And, even if some duty could be conceived from such an implausible theory, at most the duty would run to the Plaintiff's beneficiaries and not to Plaintiff itself. *See Adle-Watts v. Roundpoint Mortg. Serv. Corp.*, No. 16-cv-400, 2016 WL 3743054, at * 5 (D. Md. July 13, 2016) (duty must be owed to plaintiff); *Spaulding v. Wells Fargo Bank, N.A*., 920 F. Supp. 2d 614, 620 (D. Md. 2012), *aff'd*, 714 F.3d 769 (4th Cir. 2013) (holding that plaintiffs must prove a duty owed to them). Plaintiff makes no such showing of any duty owed to it by Mallinckrodt.

Moreover, Plaintiff alleges only economic losses. Maryland's economic loss doctrine applies here, as "a party cannot recover against another in tort where the resulting harm is purely

economic loss and the parties have no contract between them." *Balfour Beatty Infrastructure, Inc. v. Rummel Klepper & Khal, LLP*, 130 A.3d 1024, 1035 (Md. Ct. Spec. App. 2016), *aff'd*, 155 A.3d 445 (Md. 2017). Plaintiff specifically seeks to recover for "pecuniary, economic loss, in the form of paying the inflated prices for Acthar" under a theory of negligent misrepresentation. Am. Compl. ¶ 411. To recover, "claims of economic loss due to negligent misrepresentation, the injured party must prove that the defendant owed him or her a duty of care by demonstrating an intimate nexus between them." *Griesi v. Atl. Gen. Hosp. Corp.*, 360 Md. 1, 12–13, 756 A.2d 548, 554 (2000). There is no "intimate nexus" or relationship between Plaintiff and Mallinckrodt. Rather, "Plaintiff contracted with Cigna for the medical benefits of its employees" and "Cigna utilizes Tel-Drug for the distribution of specialty drugs, like Acthar." Am. Compl. ¶ 27. The negligent misrepresentation claim should be dismissed.

Finally, as discussed above, Plaintiff's actions in continuing to purchase the drug, despite all of the alleged representations about which it complains, demonstrate that it cannot meet the reliance component of this claim.

### D. Plaintiff's Fraud Claim (Count III) Fails to Meet the Particularity Requirements under Fed. R. Civ. P. 9.

This Court should dismiss Count III of Plaintiff's Complaint as it fails to plead a claim for fraud. To state a claim for fraud under Maryland law, Plaintiff must plead the following elements: (1) the defendant made a false representation to the plaintiff; (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth; (3) the misrepresentation was made for the purpose of defrauding the plaintiff; (4) the plaintiff relied on the misrepresentation and had the right to rely on it; and (5) the plaintiff suffered compensable injury resulting from the misrepresentation. *View Point Med. Sys., LLC v. Athena Health, Inc.*, 9 F. Supp. 3d 588, 612 (D. Md. 2014) (citing *Moscarillo v. Prof'l Risk*

14

*Mgmt Servs., Inc.*, 921 A.2d 245, 254 (Md. 2007)). And, like with the MCPA claim, a heightened pleading standard applies—requiring "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Bancroft Commercial, Inc. v. Goroff*, No. CIV. CCB-14-2796, 2014 WL 7409489, at *4 (D. Md. Dec. 31, 2014) (quoting *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769 (4th Cir. 2013)) (requiring a plaintiff to plead the circumstances constituting fraud with particularity). Plaintiff fails to plead a viable claim for fraud here.

In support of its fraud claim, Plaintiff alleges: "Defendants made material misrepresentations that those prices represented the purported "average" of "wholesale prices" for Acthar, or some price reasonably related thereto, which they did not." ¶ 414. Plaintiff also alleges: "Defendants also misrepresented that the inflated AWP prices for Acthar represented the actual value of the product in the marketplace, which they did not." *Id*. The time, place, or other specifics of these purported misrepresentations are conspicuously absent. Such vague and conclusory allegations do not satisfy the heightened pleading standard.

The fraud allegations here are also nearly identical to allegations that were squarely rejected by the *Rockford* court. *See City of Rockford*, 360 F. Supp. 3d 730, 776-77 (N.D. Ill. Jan. 25, 2019); *see generally Thompson's Gas & Elec. Serv., Inc. v. BP Am. Inc.*, 691 F. Supp. 2d 860, 870 (N.D. Ill. 2010) ("The fact that Defendants were offering propane for sale at inflated prices does not mean those prices were somehow 'false'" so as to support a fraud claim). In *Rockford*, the plaintiff was unable to pursue a fraud claim on the basis of Defendants' "material misrepresentations" that the prices for Acthar "represented the actual value" of Acthar when, in reality, those prices were "artificial" and "created and manipulated by the Defendants for the purpose of generating exorbitant revenue, thus constituting false representations." *City of*

*Rockford,* 360 F. Supp. 3d at 776−77. As in *Rockford*, Plaintiff's fraud claim should be dismissed.

### E.   Plaintiff Claim for Unjust Enrichment (Count IV) Warrants Dismissal as Plaintiff Fails to Plead Several Elements of the Claim.

This Court should dismiss Count IV of Plaintiff's Complaint as it fails to plead a claim for unjust enrichment. To state a claim for unjust enrichment under Maryland law, Plaintiff must plead the following elements: (1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention by the defendant of the benefit without the payment of its value. *Berry & Gould, P.A. v. Berry*, 757 A.2d 108, 113 (Md. 2000).

Here, Plaintiff's claim for unjust enrichment is premised on the same purportedly fraudulent conduct at issue in its fraud claim. *See* Am. Compl. ¶¶ 414−421. Accordingly, this claim fails because the underlying fraud claim fails. *See State Farm. Mut. Auto. Ins. Co. v. Carefree Land Chiropractic, LLC*, No. 18-cv-1279, 2018 WL 6514797, at *4 (D. Md. Dec. 11, 2018) (dismissing unjust enrichment claim where fraud claim was dismissed).

### F.   Plaintiff Fails to Plead a Cognizable Claim for Conspiracy to Defraud/Concerted Action (Count V).

This Court should dismiss Count V of Plaintiff's Complaint as it fails to plead a claim for conspiracy to defraud. To state a claim for a conspiracy under Maryland law, Plaintiff must plead the following elements: (1) a confederation of two or more persons; (2) some unlawful act done in furtherance of the conspiracy; and (3) actual legal damage resulting to the plaintiff. *Van Royen v. Lacey*, 277 A.2d 13, 14 (Md. 1971). However, Plaintiff's claim again relies on the same faulty allegations underlying their fraud claim. As in *Rockford*, "[b]ecause plaintiffs have not met their pleading requirements under Rule 9(b) for alleging fraud, plaintiffs' conspiracy to defraud claims must be dismissed as well." *See City of Rockford,* 360 F. Supp. 3d at 777. Thus,

this claim fails for the same reason as Plaintiff's fraud claim, as set out above, and should be dismissed.

## CONCLUSION

For the reasons stated above, the Court should dismiss Plaintiff Washington County Board of Education's Complaint in its entirety with prejudice.

Dated: July 29, 2019                                    Respectfully Submitted,


*/s/ Philip D. Bartz*
Philip D. Bartz (D.Md. #12344)
Bryan J. Harrison (D.Md. #19165)
**BRYAN CAVE LEIGHTON PAISNER LLP**
1155 F Street, NW Suite 700
Washington, DC 20004
(202) 508-6010
bryan.harrison@bclplaw.com

G. Patrick Watson
    (Admitted *pro hac vice*)
Lindsay Sklar Johnson
    (Admitted p*ro hac vice*)
**BRYAN CAVE LEIGHTON PAISNER LLP**
One Atlantic Center, 14th Floor
1201 W. Peachtree St., NW
Atlanta, GA 30309
(404) 572-6600
patrick.watson@bclplaw.com
lindsay.johnson@bclplaw.com

Herbert R. Giorgio, Jr.
    (*Pro hac vice* forthcoming)
**BRYAN CAVE LEIGHTON PAISNER LLP**
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, MO 63102
(314) 259-2000
herb.giorgio@bclplaw.com

*Attorneys for Defendants Mallinckrodt ARD Inc. and Mallinckrodt plc*

17