**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(BALTIMORE)**

| | |
|---|---|
| **WASHINGTON COUNTY BOARD OF EDUCATION,**<br><br>   **Plaintiff,**<br><br>   **v.**<br><br>**MALLINCKRODT ARD INC.,<br>MALLINCKRODT PLC,<br>EXPRESS SCRIPTS HOLDING COMPANY,<br>EXPRESS SCRIPTS, INC.,<br>CURASCRIPT, INC., d/b/a CURASCRIPT,<br>SD,<br>PRIORITY HEALTHCARE CORP. AND<br>PRIORITY HEALTH CARE<br>DISTRIBUTION, INC. d/b/a CURASCRIPT<br>SD AND CURASCRIPT SPECIALTY<br>DISTRIBUTION SD, ACCREDO HEALTH<br>GROUP, INC., UNITED BIOSOURCE<br>CORPORATION, and<br>GREGG A. LAPOINTE,**<br><br>   **Defendants.** | **CASE NO. 1:19-cv-01854-JKB** |

**PLAINTIFF WASHINGTON COUNTY BOARD OF EDUCATION'S
BRIEF IN OPPOSITION TO MALLINCKRODT ARD, INC. AND
<u>MALLINCKRODT PLC'S MOTION TO DISMISS THE COMPLAINT</u>**

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ................................................................................................................. 1

I.      RELEVANT BACKGROUND AND ALLEGATIONS IN THE COMPLAINT ............ 5

II.     ARGUMENT ................................................................................................................. 5

   A.   Plaintiff's Satisfaction of the Federal Notice Pleading Standards and the Rockford
        Decision. ................................................................................................................. 7

   B.   Plaintiff's Purported "Shotgun Pleading" Satisfies Fed. R. Civ. P. 8(a). ......................... 11

   C.   The Amended Complaint States a Claim Under Count I for Violations of the Maryland
        Consumer Protection Act, Md. Code Ann., Com. Law § 13-101, et seq. ....................... 12

        1.   The Amended Complaint states a claim for unfair and deceptive practices............... 14

        2.   Plaintiff's Reliance on Defendants' Misrepresentations............................................. 16

   D.   The Amended Complaint States a Claim Under Count II for Negligent
        Misrepresentation.................................................................................................... 21

   E.   The Amended Complaint States a Claim Under Count III for Fraud. ............................. 24

   F.   The Amended Complaint States a Claim Under Count IV for Unjust Enrichment.......... 26

   G.   The Amended Complaint States a Claim under Count V for Conspiracy to
        Defraud/Concerted Action. ..................................................................................... 27

III.    CONCLUSION............................................................................................................. 29

i

# TABLE OF AUTHORITIES

**Cases**                                                           **Page(s)**

*Alts. Unlimited, Inc. v. New Balt. City Bd. of Sch. Comm'rs,*
155 Md. App. 415, 843 A.2d 252 (2004) .............................................................. 26

*Arnold v. CitiMortgage, Inc.,*
578 F. Supp. 2d 801 (D. Md. 2008) .................................................................. 11

*Ashcroft v. Iqbal,*
556 U.S. 662, 129 S. Ct. 1937 (2009) .......................................................... *passim*

*Balfour Beatty Infrastructure, Inc. v. Rummel Klepper & Kahl, L.L.P.,*
451 Md. 600, 155 A.3d 445 (2017) .................................................................. 22

*Bank of Am. Corp. v. Gibbons,*
173 Md. App. 261, 918 A.2d 565 (2007) .............................................................. 26

*Bank of Am. Corp. v. Gibbons,*
918 A.2d 565 (Md. Ct. Spec. App. 2007) ............................................................ 26

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544, 127 S. Ct. 1955 (2007) .................................................................. 7

*Benson v. State,*
389 Md. 615, 887 A.2d 525 (2005) .............................................................. 27, 28

*Berry & Gould, P.A. v. Berry,*
360 Md. 142, 757 A.2d 108 (2000) .................................................................. 26

*Blue Cross & Blue Shield v. AstraZeneca Pharms. LP*
*(In re Pharm. Indus. Average Wholesale Price Litig.),*
582 F.3d 156 (1st Cir. 2009) .......................................................................... 14

*Capital Lighting & Supply, L.L.C. v. Wirtz,*
U.S. Dist. LEXIS 140711 (D. Md. Aug. 20, 2018) ................................................ 28

*City of Rockford v. Mallinckrodt ARD, Inc.,*
360 F. Supp. 3d 730 (N.D. Ill. 2019) ............................................................ 9, 10

*Com. of Pa. v. TAP Pharm. Prods.,*
36 A.2d 1197 (Pa. Commw. Ct. 2011) .......................................................... 14, 15

*Consumer Prot. Div. v. Morgan,*
387 Md. 125, 874 A.2d 919 (2005) .............................................................. 26, 27

*Cooper v. Berkshire Life Ins. Co.,*
148 Md. App. 41, 810 A.2d 1045 (2002) .......................................................... 23

*County of Suffolk v. Abbot Labs.  (In re Pharm. Indus. Wholesale Price Litig.),*
    2004 U.S. Dist. LEXIS 21448 (D. Mass. Oct. 26, 2004)  ...................................... 15

*Currie v. Wells Fargo Bank, N.A.,*
    950 F. Supp. 2d 788 (D. Md. 2013) ...................................................................... 19

*Flores v. Envtl. Tr. Sols., Inc.,*
    2018 U.S. Dist. LEXIS 82186 (D. Md. May 16, 2018) ........................................... 4

*Francis v. Giacomelli,*
    588 F.3d 186 (4th Cir. 2009) ................................................................................. 8

*Galante v. Ocwen Loan Servicing L.L.C.,*
    2014 U.S. Dist. LEXIS 98049 (D. Md. July 18, 2014) ....................................... 24

*Haley v. Corcoran,*
    659 F. Supp. 2d 714 (D. Md. 2009) ...................................................................... 13

*Harrison v. Westinghouse Savannah River Co.,*
    176 F.3d 776 (4th Cir. 1999) ......................................................................... 24, 25

*Hill v. Cross Country Settlements, L.L.C.,*
    172 Md. App. 350, 914 A.2d 231, No. 2283, September Term, 2005, 2007 WL 29191
    (Jan. 5, 2007) ........................................................................................................ 27

*In re Lupron Mktg. & Sales Practices Litig.,*
    295 F. Supp. 2d 148 (D. Mass. 2003) .................................................................. 15

*In re Pharm. Indus. Average Wholesale Price Litig.,*
    307 F. Supp. 2d 196 (D. Mass. 2004) .................................................................. 26

*In re Pharm. Indus. Average Wholesale Price Litig.,*
    491 F. Supp. 2d 20 (D. Mass. 2007) .................................................................... 19

*Jones v. Koons Auto., Inc.,*
    752 F. Supp. 2d 670 (D. Md. 2010) ..................................................................... 22

*Knox v. Mayor Balt. City,*
    2017 U.S. Dist. LEXIS 196630 (D. Md. Nov. 29, 2017) ..................................... 11

*Laber v. Harvey,*
    438 F.3d 404 (4th Cir. 2006) ............................................................................... 30

*Lloyd v. GMC,*
    397 Md. 108, 916 A.2d 257 (2007) ................................................................ 13, 21

*Martin Marietta Corp. v. Int'l Telecomms. Satellite Org.,*
    991 F.2d 94 (4th Cir. 1992) ............................................................................ 22-23

*McFadden v. Fannie Mae,*
    525 F. App'x 223 (4th Cir. 2013) ..................................................................... 1, 3

iii

*Miller v. Fairchild Indus.*,
   97 Md. App. 324, 629 A.2d 1293 (1993) ............................................................ 22

*Moczulski v. Ferring Pharms., Inc.*,
   2018 U.S. Dist. LEXIS 121341 (D. Md. July 19, 2018) ....................................... 14

*Mogilevsky v. Bally Total Fitness Corp.*,
   263 F. Supp. 2d 164 (D. Mass. 2003) .................................................................. 15

*Morris v. Osmose Wood Preserving*,
   340 Md. 519, 667 A.2d 624 (1995) ...................................................................... 13

*Nails v. S&R, Inc.*,
   334 Md. 398 (1994) .............................................................................................. 17

*People v. Pharmacia Corp.*,
   27 Misc. 3d 368, 895 N.Y.S.2d 682 (N.Y. Sup. Ct. 2010) .................................. 15

*Pharm. Indus. Average Wholesale Price Litig. v. Abbott Labs.*,
   339 F. Supp. 2d 165 (D. Mass. 2004) .................................................................. 15

*Pharm. Indus. Average Wholesale Price Litig.*,
   263 F. Supp. 2d 172 (D. Mass. 2003) .................................................................. 26

*Philips v. Pitt Cty. Mem'l Hosp.*,
   572 F.3d 176 (4th Cir. 2009) ........................................................................... 7, 10

*Plitt v. Greenberg*,
   242 Md. 359, 219 A.2d 237 (1966) ...................................................................... 26

*Sandoz, Inc. v. State* (*In re Miss. Medicaid Pharm. Average Wholesale Price Litig.*),
   190 So. 3d 829 (Miss. 2015) ........................................................................... 14-15

*Sloan v. Ally Fin. Inc.*,
   2019 U.S. Dist. LEXIS 7523 (D. Md. Jan. 15, 2019) ......................................... 11

*Smith v. Integral Consulting Servs.*,
   2016 U.S. Dist. LEXIS 114692 (D. Md. Aug. 26, 2016) ..................................... 21

*State v. Abbott Labs.*,
   341 Wis. 2d 510, 816 N.W.2d 145 (2012) ........................................................... 14

*Swinson v. Lords Landing Vill. Condo.*,
   360 Md. 462, 758 A.2d 1008 (2000) .................................................................... 23

*Tasciyan v. Med. Numerics*,
   820 F. Supp. 2d 664 (D. Md. 2011) ..................................................................... 20

*Todd v. Xoom Energy Md., L.L.C.*,
   No.: GM-15-0154, 2017 U.S. Dist. LEXIS 23311 (D. Md. Feb. 16, 2017) .......... 14

*Ultimate Outdoor Movies, L.L.C. v. Funflicks, L.L.C.*,
 2019 U.S. Dist. LEXIS 86763 (D. Md. May 23, 2019) ....................................... 24

*United States v. Cmty. Health Sys.*,
 501 F.3d 493 (6th Cir. 2007) ................................................................................ 9

**Statutes**

Md. Code Ann., Com. Law § 11-201 ........................................................................ 2

Md. Code Ann., Com. Law § 13-101 ..................................................................... 12

Md. Code Ann., Com. Law § 13-301 ..................................................................... 12

**Rules**

Fed. R. Civ. P. 8 ................................................................................... *passim*

Fed. R. Civ. P. 9(b) .............................................................................. *passim*

Fed. R. Civ. P. 12(b)(6) ........................................................................ *passim*

**Other**

Restatement (Second) of Torts (1965) ................................................................... 23

Restatement of Restitution: Quasi Contracts & Constructive Trusts § 1
(Tentative Draft No. 1, 1983) .............................................................................. 26

Plaintiff, Washington County Board of Education (hereinafter "Washington County Board" or "Plaintiff"), by and through its counsel, hereby submits its Brief in Opposition to Defendant Mallinckrodt ARD, Inc. and Mallinckrodt PLC's (hereinafter "Mallinckrodt") Motion to Dismiss Amended Complaint Pursuant to Rule 12(b)(6).

The filing of this responsive pleading, as required by the Rules, is without prejudice to the Washington County Board's right to continue to seek remand on grounds that this Court lacks jurisdiction over this case due to Defendants' improper removal of the case from the state court in Washington County.[1]

## **INTRODUCTION**

The Washington County Board of Education engaged counsel to sue, after it discovered that it was the subject of a price gouging scheme by the Defendants that has cost it $2,841,747 (and counting) for just one drug given to two teachers.  Complaint ¶ 20 (ECF No. 1).  The drug, Acthar, used to cost $40.00, but now costs over $40,000.00 due to the decisions by, and conduct of, the Defendants.  *Id*. at ¶ ¶ 19, 373.  The Washington County Board started paying for Acthar in 2016 at these inflated prices, and continues to pay for Acthar today.  *Id*. at ¶¶ 19-20.

On January 18, 2017, Mallinckrodt settled claims brought by the Federal Trade Commission ("FTC") and the Maryland Attorney General, charging Mallinckrodt with antitrust for monopolistic pricing practices.  *Id*. at ¶372; see also, FTC Complaint, ¶¶ 2, 63 (attached to

---

[1] Separately, the Washington County Board has filed a Motion to Remand this case on grounds that the non-diverse Defendant, Gregg A. Lapointe, was not fraudulently joined, as charged by the Defendants in their Notice of Removal.  *See generally*, Motion for Remand at Dkt. No. 34. Since the Court has not yet ruled on the Motion for Remand, and determined its subject matter jurisdiction over this dispute, Plaintiff does not intend to waive its jurisdictional arguments by filing this Brief in Opposition to the Mallinckrodt's Rule 12(b)(6) Motion.  *See, e.g., McFadden v. Fannie Mae*, 525 Fed. Appx. 223, 226 (4th Cir. 2013) ("We first consider whether the district court had jurisdiction over the removed action on the basis of diversity jurisdiction", even where the case was removed on the basis of an alleged "fraudulent joinder".).

Am. Cmplt as Ex. "D").  The FTC was joined in its lawsuit against Mallinckrodt by the State of

Maryland, acting by and through its Attorney General.  FTC Cmplt. at 18.  Maryland charged

Mallinckrodt with violating the Maryland Antitrust Act, Md. Code Ann. Com. Law §§ 11-201 et

seq., and sought and successfully obtained injunctive relief in the form of an agreement by

Mallinckrodt to license Synacthen to a competitor.  Am. Cmplt. at ¶¶ 9, 372.

　　While Mallinckrodt chose to settle the government's claims and pay $100 million to the

federal government and Maryland, the settlement did not encompass claims of payors like the

Washington County Board, who have suffered, and who continue to suffer, as a result of the

unlawful conduct.  Instead, such payors were left to sue on their own, which many have chosen

to do. [2]

　　On May 21, 2019, Plaintiff joined with the other payors across the country whom have

sued by filing suit against some of the same Defendants[3] in the Circuit Court for Washington

---

[2] To date, the following seven (7) cases have been filed against Mallinckrodt and other
Defendants: *City of Rockford v. Mallinckrodt ARD, Inc., et. al.*, Case No. 3:17-cv-50107,
Northern District of Illinois (filed April 6, 2017) ("*Rockford* case"); (2) *MSP Recovery Claims,
Series LLC v. Mallinckrodt ARD, Inc., et al.*, Case No. 1:18-cv-00379, Northern District of
Illinois ("MSP case"), (3) *International Union of Operating Engineers 542 v. Mallinckrodt ARD
Inc., et al.*, Case No. 2018-14059, Court of Common Pleas of Montgomery County,
Pennsylvania (filed May 25, 2018) ("*IUOE Local 542* case"); (4) *Acument Global Technologies,
Inc. v. Mallinckrodt ARD Inc., et. al.*, Case No. 3:17-cv-50107, Case No. CT-2275-19, Circuit
Court of Shelby County, Tennessee (filed May 21, 2019) ("*Acument* case"); (5) *Steamfitters
Local Union No. 420 v. Mallinckrodt ARD, LLC, et al.,* Case No. 2:19-cv-03047, Eastern District
of Pennsylvania (filed July 12, 2019) ("*Local 420* case"); (6) *United Association of Plumbers &
Pipefitters Local 322 of Southern New Jersey v. Mallinckrodt ARD, LLC, et al.*, Case No. CAM-
L-002912-19, Superior Court of New Jersey, Camden County (filed July 19, 2019) ("*Local 322*
case"); and (7) *Humana, Inc. v. Mallinckrodt ARD, LLC, et al.,* Case No.2:19-cv-06926, Central
District of Calif. (filed August 8, 2019) ("Humana case").  As Plaintiff counsel have told defense
counsel and the courts in these cases, more cases are expected to be filed in the coming weeks
for other payors situated in other states.

[3] Mallinckrodt ARD, Inc. f/k/a Questor Pharmaceuticals, Inc., Mallinckrodt PLC
("Mallinckrodt"); Express Scripts Holding Company, Express Scripts, Inc. ("Express Scripts");
CuraScript, Inc., d/b/a CuraScript SD, formerly known as CuraScript Pharmacy, Inc.

County, Maryland, where the Washington County Board is situated.  On June 24, 2019, Defendants all joined in seeking to remove the case to this Court on grounds of diversity of citizenship. (ECF No. 1).  To establish diversity, however, Defendants needed to charge Plaintiff with "fraudulent joinder" as to the non-diverse in-state Defendant, Gregg LaPointe.  In Plaintiff's Motion for Remand, the Washington County Board demonstrated that Defendants have not satisfied their substantial burden of proving fraud, as required.   Motion for Remand at 7-11 (ECF No. 34).  Plaintiff's Motion for Remand remains pending in this Court, and respectfully, should be decided before ruling on the myriad of motions to dismiss.  *See McFadden*, 525 Fed. Appx. at 226.

As the Amended Complaint details, based on discovery produced to date in related litigation pending in the *Rockford* and *Local 542* cases, it was revealed that Gaithersburg, Maryland-based LaPointe was the "mastermind of [the] new strategy" at Mallinckrodt to gouge payors, like the Washington County Board.  LaPointe was planted on Questcor's Board of Directors in 2006 by Questcor's largest shareholders, the Cavazza brothers, Claudio and Paolo (whom also own Maryland-based Sigma Tau where LaPointe has served as President)[4] for the sole purpose of engineering a coup at Questcor, to take over the company and institute the new strategy, over the objections of the existing Questcor CEO and several other Board members and executives, all of whom chose to leave the company (or were forced out) after the new strategy was adopted.  Am. Cmplt. ¶¶ 13, 83-92.

---

("CuraScript"), Priority Healthcare Corp. and Priority Healthcare Distribution Inc. ("Priority") also d/b/a CuraScript SD (collectively "CuraScript SD"), Accredo Health Group, Inc. ("Accredo") and United BioSource Corporation n/k/a United BioSource, LLC ("UBC") (collectively referred to as the "Express Scripts Entities"); and Gregg A. LaPointe ("LaPointe").

[4] Am. Cmplt. ¶¶ 79-81, 84-87, 103-104.  In its motion to dismiss, Mallinckrodt makes no mention of the Cavazzas or their unlawful conduct as detailed in the Amended Complaint.

Rather than focus on these facts, Mallinckrodt (and its co-defendants) seek to garner dismissal of Plaintiff's meritorious claims, with prejudice, by leveling baseless, *ad hominem* attacks on Plaintiff's counsel.[5]  Such commentary should have no place in this Court.  *E.g., Flores v. Envtl. Trust Sols., Inc.,* 2018 U.S. Dist. LEXIS 82186 (D. Md. May 16, 2018) at * 2, n. 1 ("Going forward, counsel for both parties would be wise to focus on the merits of the case, which have value to the Court in deciding the issues, as opposed to ad hominem attacks, which do not and which suggest the lack of a strong argument on the merits.").

Stripped of their invective, Mallinckrodt's core arguments under Rule 12(b)(6) consist of the following:

1. Plaintiff over-pleads a "shotgun pleading" in violation of Rule 8;

2. Plaintiff fails to sufficiently plead claims for consumer fraud, fraud, negligent misrepresentation, unjust enrichment and conspiracy; and

3. Plaintiff under-pleads fraud claims in violation of Rule 9.

Since each of these arguments challenge the sufficiency of Plaintiff's Amended Complaint, the Court's focus must be on the Amended Complaint.  Once the Court reviews Plaintiff's well-plead, "100-plus page Amended Complaint", Mallinckrodt Br. at 7, it should easily find it sufficient, warranting denial of Mallinckrodt's Motion to Dismiss.

---

[5] In their pleadings filed in this Court, Defendants collectively, and unnecessarily, engage in unwarranted personal attacks on the Washington County Board's counsel.  *E.g.*, Mallinckrodt Br. at 1 ("This case is yet another in a series of cases attempted by Plaintiff's lead counsel complaining about the price of Mallinckrodt's specialty drug, Acthar."); Mem. of Points and Authorities in Support of Defendant Gregg A. LaPointe's Motion to Dismiss Plaintiff's Amended Complaint ("LaPointe Mem.")(ECF No. 50-1) at 1 ("This is not the first time Plaintiff's lead attorneys have attempted to capitalize personally on the price of Mallinckrodt['s] Acthar"); Mallinckrodt's Mem. of Law in Opposition to Plaintiff's Motion to Remand (ECF No. 52) at 13 ("look[ing] at prior conduct of Plaintiff's counsel").

# I.      RELEVANT BACKGROUND AND ALLEGATIONS IN THE COMPLAINT

The Washington County Board of Education sued Mallinckrodt for causing it to spend

$2,841,747 over the last three years for Acthar.  Complaint ¶ 20 (ECF No. 1).  Plaintiff continues

to pay the inflated AWPs for Acthar today, with no relief in site.  *Id*. at ¶¶ 19-20.  Because

Mallinckrodt's settlement with the Maryland Attorney General did nothing to abate its harm, it

sued, along with many other similarly-situated payors across the country.

Defendants all joined with Mallinckrodt in removing this case to federal court, on a

frivolous charge of "fraudulent joinder" of the mastermind behind the scheme, Gregg LaPointe,

in May.  Plaintiff timely moved for remand, citing detailed evidence as to why its claims against

LaPointe were not fraudulently interposed.  Many of these facts have been incorporated into the

Amended Complaint which all Defendants ask this Court to review in the context of their Rule

12(b)(6) motions to dismiss. So, whether this Court chooses to ignore the new factual averments

of the Amended Complaint, which Defendants argue in their opposition,[6] in ruling on Plaintiff's

Motion to Remand is of no moment, because the same evidence has been submitted in support of

the Motion.

While the parties await a ruling on whether this Court has subject matter jurisdiction over

this case, cases continue to be filed against Mallinckrodt.  While Mallinckrodt's Motion claims

that "a series of cases" has been attempted by Plaintiff's counsel, it fails to advise this Court that

the Washington County Board and its counsel are far from alone in seeking justice against this

company.  Just last week, one of the largest insurance companies in the country, Humana, filed

suit against Mallinckrodt alleging the same wrongful conduct as Plaintiff does in its Amended

Complaint.  See *Humana, Inc. v. Mallinckrodt ARD, LLC, et al.,* Case No.2:19-cv-06926,

---

[6] ECF No. 52  at 5 ("The Court should disregard Plaintiff's amended complaint in deciding
remand.")

Central District of Calif. (filed August 8, 2019) ("Humana case") at ECF No. 1.  The complaint in *Humana* alleges violations of Maryland law.  *Id.* at ¶¶172, 175.  The *Humana* case was not brought by Plaintiff's counsel here.

Similarly, a *qui tam* case involving three separate former employees of Mallinckrodt was unsealed against Mallinckrodt earlier this year.  *See U.S. ex. Rel. Charles Strunck and Lisa Pratta v. Mallinckrodt ARD, Inc., et al.* 2:12-cv-00175-BMS (E.D.Pa.) at Document No. 40 ("*Strunck & Pratta Complaint*"); *U.S. ex. Rel. Scott Clark v. Questcor Pharmaceuticals, Inc.,* 2:13-cv-01776-BMS (E.D.Pa.) at Document 1 ("*Clark Complaint*").  The Relators in those cases all have private counsel – which is not Plaintiff's counsel here.  Further, the government has chosen to intervene in those cases, and the government has its own counsel, making their own choices about bringing the lawsuits against Mallinckrodt.  ECF. No. 55.

In the wake of the unsealing of that case, undersigned counsel for Plaintiff here did file suit in the same court on behalf of private client.  *See Steamfitters Local Union No. 420 v. Mallinckrodt ARD, LLC, et al.,* Case No. 2:19-cv-03047, Eastern District of Pennsylvania (filed July 12, 2019) ("*Local 420* case").  Thereafter, Plaintiff's counsel also filed suit on behalf of a different client in New Jersey where both Mallinckrodt and one of the Relators are based.  *See United Association of Plumbers & Pipefitters Local 322 of Southern New Jersey v. Mallinckrodt ARD, LLC, et al.*, Case No. CAM-L-002912-19, Superior Court of New Jersey, Camden County (filed July 19, 2019) ("*Local 322* case").

Finally, Mallinckrodt has completely ignored the fact that it was sued by a group of Medicare secondary payors in California federal court, and its counsel moved to have that case transferred to *Rockford*, which request was granted.  See *MSP Recovery Claims, Series LLC v.*

*Mallinckrodt ARD, Inc., et al*., Case No. 1:18-cv-00379, Northern District of Illinois ("MSP case").

What is curious about Mallinckrodt's implication that the cases filed against it are simply part of some campaign by Plaintiff's counsel here is its failure to explain that multiple lawyers and law firms, representing multiple plaintiffs, including the federal government, have all sued in various courts around the country. And, while Mallinckrodt successfully petitioned to have one such case transferred to *Rockford*, it has done nothing about all these other cases, including this one. For this reason, any innuendo that Plaintiff's counsel here is "fishing" for anything other than expedient justice for their clients should be rejected.

## II.    ARGUMENT

### A.    Plaintiff's Satisfaction of the Federal Notice Pleading Standards and the Rockford Decision.

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the plaintiff's complaint. Accepting all factual allegations as true, the court should review the complaint in the light most favorable to the plaintiff. *See Philips v. Pitt Cty. Mem'l Hosp*., 572 F.3d 176, 180 (4th Cir. 2009). To survive a motion to dismiss, the complaint must state sufficient "facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955 (2007).

Under the Federal Rules, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[D]etailed factual allegations" are not required, but the plaintiff must allege facts that, when "accepted as true . . . state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009). In analyzing whether a complaint has met this standard, the "reviewing court [must] draw on its judicial experience and common sense." *Id*. at 679. "A

claim has facial plausibility when the plaintiff pleads factual content that allows that court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678.

Mallinckrodt concedes that "the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of the claim made against" it.  Mallinckrodt Br. at 6 (quoting *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009)).  In arguing that "[t]his case is yet another in a series of cases attempted by Plaintiff's lead counsel complaining about the price of Mallinckrodt's specialty drug, Acthar", *id*. at 1, Mallinckrodt further concedes that it has more than adequate "notice of the nature of the claims made against it."  *Giacomelli*, 588 F.3d at 192.

In view of the fact that Mallinckrodt argues alternatively, and somewhat contradictorily, that the Plaintiff's Amended Complaint is both "lengthy" and "rambling", yet "neither short and plain", it is important for this Court to read the Plaintiff's admittedly extensive pleading with the same "harmony" by which the federal courts read the requirements of Rule 8 and Rule 9(b). Mallinckrodt Br. at 3, 7.

> Rule 9(b) is not to be read in isolation, but is to be interpreted in conjunction with Federal Rule of Civil Procedure 8.  *Michaels Bldg. Co. v. Ameritrust Co., N.A.,* 848 F.2d 674, 679 (6th Cir. 1988) ("[T]he two rules must be read in harmony."). Rule 8 requires only "a short and plain statement of the claim" made by "simple, concise, and direct allegations." *Id.*  Rule 8 is commonly understood to embody a regime of "notice pleading" where technical pleading requirements are rejected in favor of an approach designed to reach the merits of an action. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002) ("The liberal notice pleading of Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim."). When read against the backdrop of Rule 8, it is clear that the purpose of Rule 9 is not to reintroduce formalities to pleading, but is instead to provide defendants with a more specific form of notice as to the particulars of their alleged misconduct. *See Michaels Bldg. Co.,* 848 F.2d at 679 ("[T]he purpose undergirding the particularity requirement of Rule 9(b) is to provide a defendant fair notice of the substance of a plaintiff's claim in order that the defendant may prepare a responsive pleading."); *see also Sanderson*, 447 F.3d at 877 (dismissal was appropriate under 12(b)(6) where the complaint contained "no

specific information about the filing of the claims themselves--nothing, that is, to alert the defendants 'to the precise misconduct with which they are charged and to protect defendants against spurious charges of immoral and fraudulent behavior'" (brackets removed) (quoting *United States ex. rel. Clausen v. Lab. Corp. of Am., Inc*., 290 F.3d 1301, 1310 (11th Cir. 2001))).

*United States ex. rel. Bledsoe v. Cmty. Health Sys.,* 501 F.3d 493, 503 (6th Cir. 2007):

Demonstrating its clear understanding of the Amended Complaint, and hereby supporting Plaintiff's satisfaction of the requirement of notice pleading, Mallinckrodt directs this Court to the decision of the federal court in Rockford on January 25, 2019, granting in part, and denying in part, Mallinckrodt's Motion to Dismiss. Mallinckrodt Br. at 1 (citing *Rockford*, 360 F.Supp. 3d 730 (N.D.Ill. 2019)). But, in arguing that "[c]ounsel is fishing for a theory that sticks", *id.*, Mallinckrodt ignores the fact that two of the Plaintiff's antitrust theories in Rockford have "stuck" in Rockford, and that the case is proceeding through discovery on those claims. *Rockford,* 360 F.Supp. 3d at 777 ("defendants' motions to dismiss are … denied [as to] Counts VI, VII, and VII"). In fact, it is due to the discovery in Rockford that Plaintiff's counsel have been able to provide Defendants with even greater specificity than the complaint filed in Rockford over two years ago.[7]

In denying Mallinckrodt's motion on Rockford's antitrust claims, the *Rockford* Court held:

> Rockford alleges that defendants conspired to keep prices high, restrict output, and prevent competition from entering the market. The "new strategy" reduced the number of wholesale distributors of Acthar from three to one, thereby restricting patient's access to Acthar, and employed

---

[7] As discussed at length in Plaintiff's Brief in Opposition to the Motion to Dismiss filed by Defendant LaPointe, Maryland-based LaPointe's integral role as the "mastermind" of the Mallinckrodt "new strategy" in 2007 was only discovered after the cases were filed in Illinois in 2017 (*Rockford*) and Pennsylvania in 2018 (*Local 542*). Consequently, that LaPointe was not named as a Defendant, or otherwise identified, in prior any pleading is of no moment to the sufficiency of the current Amended Complaint filed in this Court. LaPointe has since been added to the Complaints filed in the *Local 322* case and *Local 420* case.

Express Scripts' market power not to push for lower-cost alternatives. SAC ¶¶ 48, 103. The ASAP thus allowed Mallinckrodt to maintain its dominant monopoly power in the ACTH drug market, maintain prices at artificially high levels, and exclude less expensive competitive products from the ACTH drug market. The other focus of the SAC is the exclusion of competitive alternatives to the market and highlights the Synacthen Acquisition. Because Retrophin planned to bring Synacthen to market as the first viable competitor to Acthar, keeping Synacthen from the United States market resulted in complaints filed by the FTC and Retrophin for depriving the market of a lower-cost alternative with no procompetitive justifications.   *Id.* ¶ 151. The elimination of competition with no procompetitive justification is the type of conduct that the antitrust laws were designed to guard against. Consequently, the court finds that Rockford's assertions of anticompetitive conduct are sufficient to adequately plead the "unreasonable restraint of trade" prong of Rockford's § 1 claim.

*Id.* at 754-55 (citations omitted). [8]

The *Rockford* case included no claims under Maryland law.  This case, in turn, includes no claim for antitrust.  Thus, the *Rockford* case and this case are different, legally and factually.  So, at best, the *Rockford* decision demonstrates only to this Court that Defendants' bald assertion that the Plaintiff counsel is "fishing for a theory" is just wrong.  The Defendants' further argument here that, "[a]s in Rockford, Plaintiff's fraud claim should be dismissed" should be rejected for the simple fact that "Plaintiff's 100-plus page Amended Complaint" here contains far more facts than were alleged in Rockford, due to the benefit of discovery from Rockford.  Mallinckrodt Br. at 7, 16.

---

[8] The Court of Appeals for the Fourth Circuit held in *Philips*, "[i]n reviewing a Rule 12(b)(6) dismissal, we may properly take judicial notice of matters of public record.  We may also consider documents attached to the complaint, as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." 572 F.3d at 180 (citations omitted).

## B.      Plaintiff's Purported "Shotgun Pleading" Satisfies Fed. R. Civ. P. 8(a).

Mallinckrodt's leading argument suggests that Plaintiff's Amended Complaint is too long and too detailed, such that it should be dismissed for allegedly violating the Rule 8 requirement of a "short and plain statement of a claim."  Mallinckrodt Br. at 7 ("Plaintiff's 100-plus page Amended Complaint is neither short nor plain, and thus fails to comply with this rule.").  In this age of *Twombly* and *Iqbal, supra*., plaintiffs rarely see such an argument interposed by defendants.  This is especially true in a case where the Defendants simultaneously argue that the same pleading is not detailed enough to satisfy the Rule 9(b) requisite for particularity.

In an effort to avoid clarity in its Motion, Mallinckrodt simply labels Plaintiff's Amended Complaint a "shotgun pleading", citing two unreported, district court decisions involving *pro se* litigants[9] as purported authority: *Rufus v. Seneca Mortg. Servicing, LLC*, No. 17-cv-351, (D.Md. June 14, 2017) and *Sewraz v. Morchower*, No. 08-cv-100, (E.D.Va. Jan. 28, 2009).[10] Mallinckrodt Br. at 8.  Months after the Rufus case was decided, however, this Court rejected such a perfunctory label to a plaintiff's pleading in light of the governing standards of *Twombly* and *Iqbal*.  *Knox v. Mayor & City Council Balt. City*, 2017 U.S.Dist. LEXIS 196630 (D. Md. Nov. 30, 2017) at *13 ("Whatever validity that concept has in other circumstances [such as the

---

[9] Mallinckrodt also cites as authority the unreported decision of this Court in *Sloan v. Ally Fin. Inc*., GJH-18-1979, 2019 U.S. Dist. LEXIS 7523 (D.Md. Jan. 15, 2019), involving dismissal of another *pro se* plaintiff's complaint.

[10] In a strained argument, Mallinckrodt suggests to this Court that it "has often dismissed complaints which fail to comply with the rule."  Mallinckrodt Br. at 7.  In support, Mallinckrodt cites just one reported, and inapposite, decision of this Court which addressed "numerous complaints filed by the Plaintiffs", "laced with vitriol and venom", unlike the singular Amended Complaint filed in this Court.  *Arnold v. CitiMortgage, Inc.*, 578 F.Supp. 2d 801, 803-04 (D.Md. 2008).  *Arnold*, like *Rufus*, was filed by *pro se* plaintiffs.  Even so, in finding the complaints were "too long", the Court in *Arnold* allowed the *pro se* plaintiffs to "re-write and file within thirty days."

*pro se* complaint at issue in Rufus], it is not a helpful label here in assessing the sufficiency of Knox's complaint")(brackets added).

Labels notwithstanding, and as discussed above, the Amended Complaint here provides extensive detail as to the alleged unlawful conduct of each defendant, including Mallinckrodt, and then marshalls such specific factual averments into the individual causes of action that apply to each such defendant.  Contrary to Mallinckrodt's *ipse dixit* assertion, the Amended Complaint rarely refers to just "defendants".  The overwhelming evidence that the Amended Complaint does not "fail to articulate claims with sufficient clarity to allow the defendant to frame a responsive pleading", Mallinckrodt Br. at 8 (quoting Rufus), is the fact that Mallinckrodt has filed the instant Motion to Dismiss, and further labeled this case "yet another in a series of cases" in which the plaintiffs have succeeded in defeating Mallinckrodt's prior dismissal motions as to claims of federal antitrust and state consumer fraud.

C.     **The Amended Complaint States a Claim Under Count I for Violations of the Maryland Consumer Protection Act, Md. Code Ann., Com. Law § 13-101, et seq.**

The Washington County Board states a claim against Mallinckrodt for violations of Maryland's Consumer Protection Act ("MCPA").  The law provides that an unfair, abusive, or deceptive trade practice includes, inter alia, a "[f]alse, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers" and the "[f]ailure to state a material fact if the failure deceives or tends to deceive."  Md. Code Ann., Com. Law § 13-301.

As the Amended Complaint points out,[11] in construing the MCPA, the Court of Appeals of Maryland has observed:

> The Consumer Protection Act, codified at Maryland Code (1975, 2005 Replacement Volume) §§ 13-101 et seq. of the Commercial Law Article was "intended to provide minimum standards for the protection of consumers in the State." § 13-101. As this Court explained in *Morris v. Osmose Wood Preserving, supra:*
>
> "The General Assembly enacted the Consumer Protection Act . . . in response to 'mounting concern over the increase of deceptive trade practices in connection with sales of merchandise, real property, and services and the extension of credit.' . . . The Legislature was concerned that these deceptive practices were undermining public confidence in merchants . . . . It found existing federal and State laws to be 'inadequate, poorly coordinated and not widely known or adequately enforced,' and found 'that improved enforcement procedures [were] necessary to help alleviate the growing problem of deceptive consumer practices.' . . . With the Act, therefore, the General Assembly intended 'to set certain minimum statewide standards for the protection of consumers across the State' and to 'take strong protective and preventative steps to investigate unlawful consumer practices, to assist the public in obtaining relief from these practices, and to prevent these practices from occurring in Maryland."
> 340 Md. at 536-37, 667 A.2d at 633 (citations omitted).

*Lloyd v. GMC*, 397 Md. 108, 916 A.2d 257 (2007).

In seeking dismissal of Plaintiff's Count I, Mallinckrodt argues that Plaintiff's Amended Complaint "fails to state a claim under the [MCPA]".  Mallinckrodt Br. at 8.  Specifically, Mallinckrodt claims (1) there is no unfair or deceptive practice or misrepresentation by Mallinckrodt, and (2) there is no allegation of reliance by Plaintiff.   Mallinckrodt Br. at 9, 10. Mallinckrodt is wrong on both counts.

Further, Mallinckrodt argues that a "heightened pleading standard" applies broadly to all of Plaintiff's claims for misrepresentation and deception under the MCPA.  Mallinckrodt cites no state court authority for such a sweeping proposition, only a decision of this Court.  Mallinckrodt Br. at 8-9 (citing *Haley v. Corcoran*, 659 F.Supp. 2d 714, 724 (D. Md. 2009)).  While the Court

---

[11] Am. Cmplt. ¶ 389 (*quoting Morris v. Osmose Wood Preserving*, 340 Md. 519, 536-37, 667 A.2d 624 (1995).

in *Moczulski v. Ferring Pharm., Inc.,* 2018 U.S. Dist. LEXIS 121341 (D. Md. July 20, 2018)
cited *Haley* in applying Rule 9(b) to the plaintiff's fraud-based MCPA claims in that case, only
fraud claims are subject to such a heightened pleading standard. "While claims of fraud under
the MCPA are subject to the heightened pleading requirements of Rule 9(b), 'omissions are not
subjected to the heightened pleading standards of Rule 9(b) because such allegations cannot be
described in terms of the time, place, and contents of the omission.'" *Todd v. Xoom Energy Md.,
LLC,* 2017 U.S.Dist. LEXIS 23311 (D. Md. Feb. 16, 2017) at *17 (citations omitted).

## 1. The Amended Complaint states a claim for unfair and deceptive practices.

The Washington County Board pleads with specificity, inter alia, that the Mallinckrodt
and its co-defendants engaged in several acts or practices, including intentional omissions, which
artificially increased the AWPs for Acthar, knowing that those AWPs were false and
unconscionably high, causing Plaintiff to overpay for Acthar. *E.g.,* Am. Cmplt. ¶¶ 17-18, 25, 28-
29, 178-221. This constitutes both unfair and deceptive conduct by the defendant drug company
which is actionable under the state consumer fraud laws of Maryland and multiple other states.
Numerous other courts have so held, at the pleading stage and beyond. *See, e.g., In re
Pharmaceutical Industry Average Wholesale Price Litigation v. AstraZeneca*, 582 F.3d 156 (1st
Cir. 2009) (affirming trial court's finding drug company liable for unfair and deceptive business
practices for publishing inaccurate AWPs); *Watson Labs., Inc. v. State*, 214 S. 2d 573 (Miss.
2018)(same); *Com. of Pennsylvania v. TAP Pharm. Prods.*, 36 A.2d 1197, (Pa. Cmwlth. 2011),
vacated on other grounds, 626 Pa. 1, 94 A.2d 350 (2014)(same); *State of Wisconsin v. Abbott
Labs., et. al.,* 341 Wis. 2d 510, 816 N.W.2d 145 (2012)(affirming $9mm jury award); *Sandoz,
Inc. v. State* (*In re Miss. Medicaid Pharm. Average Wholesale Price Litig.*), 190 So. 3d 829, 842
(Miss. 2015)("The trial court did not err in finding that Sandoz's practice of reporting false

AWPs was a deceptive trade practice.  The 'prices' were exaggerated to an extent that they were not even prices. Providing false information is deceptive. . . ."); *see also, In re Lupron Mktg. & Sales Practices Litig.*, 295 F.Supp. 2d 148, 181-82, n. 35 (denying motion to dismiss consumer fraud claims for AWP inflation under multiple state's laws); *Cf. People of the State of New York v. Pharmacia Corp.*, 27 Misc. 3d 368, 895 N.Y.S.2d 682, 693-94 (N.Y. Sup. Ct. 2010)(denying cross-motions for summary judgment on consumer fraud claims).

In a case involving the unlawfulness of inflated AWPs by a drug company that went to trial and verdict (and in which the undersigned counsel for Plaintiff served as trial counsel), the appellate court, in affirming the verdict on a state consumer fraud claim, held:

> [t]he trial judge could find in the CPL action that BMS engaged in "deceptive conduct [fictitious or deceptive pricing scheme] which creates a likelihood of confusion or of misunderstanding" within the meaning of Section 2(4)(xxi) of the CPL (catchall provision).  *See In re Pharm. Indus. Average Wholesale Price Liti*g. (MDL 2010), 738 F. Supp. 2d 227 (D. Mass. 2010) (in states where consumer protection statutes prohibit deception only, including Pennsylvania, a fact-finder may well conclude that contributing to inflated, fictitious AWPs to circumvent changes in reimbursement constitutes "deceptive conduct").

*Com. of Pennsylvania v. TAP Pharm. Prods.*, 36 A.2d 1197, (Pa. Cmwlth. 2011), vacated on other grounds, 626 Pa. 1, 94 A.2d 350 (2014).

The *In re Pharmaceutical Industry Average Wholesale Price Litigation* ("*In re AWP*") case (cited by the Pennsylvania appellate court) was a federal, multi-district litigation involving consumer fraud claims by myriad states, local governments, private third-party payors and consumers for AWP inflation.  The MDL Court denied several defendants' motions to dismiss on grounds similar to those interposed by Mallinckrodt here.  *See In re AWP*, 263 F.Supp. 2d 171 (D.Mass. 2003); 339 F.Supp. 2d 165, 182-183 (New York consumer fraud law); *County of Suffolk v. Abbott Labs., et. al.,* 2004 U.S. Dist. LEXIS 21448 (D. Mass. Oct. 26, 2004)(same).

Mallinckrodt's failure to account for these many precedents should warrant denial of its

Motion to Dismiss on grounds that its alleged unlawful conduct fails to state a claim under the

MCPA.[12]

### 2. Plaintiff's Reliance on Defendants' Misrepresentations.

Mallinckrodt charges that "Plaintiff alleges no reliance upon Mallinckrodt's actions", as

required by the MCPA.  Mallinckrodt Br. at 10.  Mallinckrodt is wrong.

The Amended Complaint alleges reliance by the Washington County Board on the

inflated AWPs for Acthar as set by Mallinckrodt and which it paid in multiple averments

throughout the Amended Complaint.  Under Count I, Plaintiff specifically alleges that it was

induced to pay for Acthar at Mallinckrodt's inflated AWPs based upon its misrepresentations

and fraudulent omissions as follows:

> Plaintiff would not have paid for the Acthar at the inflated AWP prices set by Defendants had Defendants not engaged in deception, fraud, false premise, misrepresentation, knowing concealment, suppression, and/or omission of material facts in their marketing, promotion and sale of Acthar exclusively through the ASAP.

> Defendants' misrepresentations and fraudulent omissions were material to Plaintiff.  Had Defendants disclosed the truth about Acthar, including its limited uses and benefits, and the real reasons for its exorbitant pricing, Plaintiff would not have paid the prices it did for Acthar.

> As a direct and proximate result of Defendants' unlawful, unfair, deceptive and fraudulent conduct in violation of the MCPA, Plaintiff has suffered injury in fact and will continue to be injured by having to pay inflated prices for Acthar for the treatment of rheumatoid arthritis if its beneficiaries.  Further, as a direct and proximate result of Defendants' violation of the MCPA, Plaintiff incurred actual damages, including the inflated cost of Acthar, among other costs.

Am. Cmplt. ¶¶ 396-398 (ECF No. 36)(emphasis added in late line only).

---

[12] It is noteworthy that Humana has interposed an MCPA claim against Mallinckrodt in its Complaint filed last week.  *Humana* case, ECF No. 1 at ¶¶ 172, 175.

Earlier, Plaintiff explains:

> [T]hroughout the relevant time period, since August 2007 through the present, Mallinckrodt has <u>willfully manipulated and inflated the prices paid by TPPs and payors for Acthar</u>, causing payors like WCPS to substantially overpay for a drug with very limited uses and benefits and an unknown method of action (the "Pricing Scheme"). Specifically, after limiting Acthar distribution by the Distribution Scheme, in August 2007, Mallinckrodt agreed with CuraScript and UBC to raise the average wholesale prices ("AWPs") paid for Acthar by the Board from $2,062.79 per vial to $29,086.25, a more than 1,300% increase in the cost of Acthar in the span of one month. Such a price increase is both unprecedented and unconscionable, especially for a more than 65-year old drug. Mallinckrodt, CuraScript and UBC have continued to raise the AWPs for Acthar each year, sometimes by double-digit percentages, such that now a drug that once cost $40.00 costs patients and third-party payors over $43,000.00. The only way Mallinckrodt has been able to get TPPs to pay such high prices for Acthar was through the fraudulent schemes alleged herein. But for such schemes, payors like WCPS would not have paid what they did for Acthar.

Am. Cmplt. ¶ 17 (ECF No. 36). The averment of "but for" causation is sufficient under Maryland law at this stage. *Nails v. S&R, Inc*., 334 Md. 398, 416-17 (1994).[13]

Plaintiff further alleges that Mallinckrodt has misrepresented the value of Acthar to treat the rheumatoid arthritis for which Plaintiff's beneficiaries have been prescribed Acthar, even though the mode of action is completely unknown and Acthar has never been approved as a long-term, maintenance medication for the treatment of rheumatoid arthritis:

> Despite [the] unambiguous finding by the FDA [that the exact mechanism of action of Acthar is not known], Mallinckrodt has repeatedly and consistently misrepresented to the public the "value" of Acthar for specific indications, including the rheumatoid arthritis for which Plaintiff's beneficiaries were prescribed Acthar.
>
> Mallinckrodt has falsely and misleadingly promoted the sale of Acthar for the long-term treatment of rheumatic disorders, including rheumatoid arthritis, which marketing far exceeds the approved indication, "as adjunctive therapy for short-term administration (to

---

[13] The Maryland Court of Appeals held, "[o]f course, if the plaintiff establishes that he was entitled to rely on the misrepresentation and that the misrepresentation was the sole inducement for his action, so that the plaintiff would have acted differently "but for" the misrepresentation, the plaintiff has established the "reliance element" of a fraud claim. Nevertheless, a strict "but for" analysis is not the exclusive test for reliance. This Court has long recognized that the misrepresentation need not have been the only motivation for the plaintiff's actions; it is sufficient that the misrepresentation substantially induced the plaintiff to act." *Id.*

tide the patient over an acute episode or exacerbation) in … rheumatoid arthritis.

Indeed, in has been part of Mallinckrodt's long-term business strategy to promote the administration of Acthar as a maintenance medication for all indications where it is approved only for the treatment of acute episodes or exacerbations of disease.

Executives of Questcor, especially CEO Don Bailey, and Mallinckrodt, have routinely misrepresented the value of Acthar for the treatment of specific diseases, despite the FDA's finding that the "mechanism of action" ("MOA") is not known.

Internally, Mallinckrodt admits that the mode of action for Acthar is not known; publicly, it misleads investors, third party payors, like Plaintiff, doctors and patients.

For instance, in August 2011, when asked directly by investors about the Acthar MOA, Bailey stated claimed publicly that while "Acthar is an extraction of porcine pituitaries", "it's an undisclosed composition, so that's a trade secret." He also claimed that it is a barrier to entry for competitors to enter the market for ACTH drugs that "there are probably multiple active ingredients" in Acthar, and "there are multiple peptides within Acthar, and they're undisclosed." (emphasis added).

Late on that same conference call, Bailey admitted "there is actually a fair amount of confusion about the mechanism of action here." He then passed the question to Christine Clemson, a medical science liaison whom Mallinckrodt uses to promote the efficacy of Acthar to doctors. She admitted, "[w]e now know [about Acthar's] effects in, say, MS are really relevant to its direct effect on the immune system. …So that's really the primary, direct effect of Acthar that I discuss in an MS's office. This is new information…."

As Express Scripts' Dr. Miller conceded, Acthar is not worth what Defendants are charging for it, especially for the treatment of rheumatoid arthritis.

Am. Cmplt. at ¶¶ 118-122, 126-127, 131 (emphasis in original).

Despite these unambiguous averments of Mallinckrodt's misrepresentations, which were the "but for" cause of Plaintiff's economic harm under MCPA, Plaintiff further explains:

The Defendants had and have knowledge that the Plaintiff would probably rely on their false statements, which, if erroneous, would cause loss or injury to Plaintiff.

The Plaintiff justifiably took action in reliance on the false statements in paying for the Acthar at the falsely inflated AWP-based price.

The Defendants made these false representations about the prices of Acthar with the intent of misleading Plaintiff into relying on the prices as real and fact-based prices, rather than artificially inflated prices.

Plaintiff justifiably relied upon these false misrepresentations in purchasing and/or reimbursing Acthar at the amount charged by Cigna based on the prices set by Mallinckrodt and Express Script by contract, as charged by the Plaintiff's beneficiaries' doctors. These prices were included in Plaintiff's Cigna contract, and thus Plaintiff was obligated to pay them.

The prices for Acthar set forth in such Plaintiff's contracts with Cigna were prices set by Mallinckrodt and Express Scripts as provided by the contracts between them. As such, all Defendants communicated these false AWP prices for Acthar directly to Plaintiff for the Acthar sold to Plaintiff's beneficiaries.

Am. Cmplt. ¶¶ 408-409, 417-419 (ECF No. 36).

While the parties agree that reliance is undoubtedly an element of a MCPA claim, "a consumer relies on a misrepresentation when the misrepresentation substantially induces the consumer's choice." *Currie v. Wells Fargo Bank, N.A.,* 950 F.Supp. 2d 788, 796 (D. Md. 2013)(cited at Mallinckrodt Br. at 11). The above-cited averments are sufficiently to plead Plaintiff's reliance. This Court can certainly "infer" from these facts that the Plaintiff's "choice" to pay for Acthar at the inflated AWPs[14] was "substantially induced" by Mallinckrodt's misrepresentations and deceit about the price and value of Acthar. *Cf. Brooks v. Cama Self Directed IRA, LLC*, 2019 U.S. Dist. LEXIS (D. Md. Jan. 31, 2019) at * 34.

---

[14] Mallinckrodt argues because Plaintiff continues to pay for Acthar today that fact "totally undercuts its allegations that it was deceived or defrauded in any material way to purchase Acthar." Mallinckrodt Br. at 11. Not so. Plaintiff explains that, "by concealing from Plaintiff the true costs for Acthar" and "conceal[ing] [Defendants'] direct relationships", among other acts, Mallinckrodt "deceived Plaintiff". Am. Cmplt. at ¶¶ 10, 193. Through its scheme, Mallinckrodt overcame resistance by payors, like Plaintiff, to Acthar's higher prices. *Id*. at 112-115, 142-147, 164, 170, 264-306. Plaintiff is obligated to pay for prescription drug benefits for its employees under its contract with Cigna/Express Scripts. *Id*. at ¶¶ 10, 26-29, 35-37. Plaintiff brings this lawsuit for declaratory and injunctive relief to end Defendants' unlawful practices, not to interfere with its beneficiaries' healthcare, as Mallinckrodt suggests. *Id*. at 30. Courts have found that continued payment for a drug under a contract that requires such payment does not let a manufacturer off the hook for its ongoing consumer fraud because TPPs are "stuck". *See, e.g*., *In re AWP*, 491 F.Supp. 2d 20, 45-46, 103 (D. Mass. 2007)("TPPs faced significant structural impediments to changing the reimbursement system for a single drug, … so TPPs were stuck paying for [the drug] based on the inflated AWP").

Likely realizing that Plaintiff in fact has alleged reliance throughout its Amended Complaint, Mallinckrodt seeks to argue that Plaintiff's alleged reliance is unreasonable. Mallinckrodt Br. at 11 ("Any suggestion of reliance on an improper 'marketing scheme' is implausible and not supported…").  However, this Court in Curry held that "the Maryland Court of Appeals has yet to hold that reasonable reliance is an element of an MCPA misrepresentation claim despite repeated opportunities to do so."  950 F.Supp. 2d at 797 (citing cases). Consequently, Mallinckrodt's arguments about the reasonableness or "implausibility" of Plaintiff's alleged reliance on Mallinckrodt's misrepresentations should be rejected at this juncture.  "[S]uch a fact-intensive inquiry is generally ill-suited for resolution at the pleading stage."  *Id.* at 798 (citing *Tasciyan v. Med. Numerics*, 820 F.Supp. 2d 664, 673 (D. Md. 2011)).

Mallinckrodt also alters its argument about reliance by seeking to interpose the "learned intermediary" doctrine as a potential bar to Plaintiff's MCPA claim.  Mallinckrodt Br. at 11, n.2. Mallinckrodt cites no case where the learned intermediary doctrine has been used to defeat the liability of a drug manufacturer for violations of the MCPA by the manufacturer's willful misrepresentations and inflation of the price paid by a third-party payor, as alleged here.[15] Accordingly, Mallinckrodt's unsupported legal argument should be rejected.

---

[15] Mallinckrodt erroneously cites cases from the "products liability context" for the proposition that the liability of a drug manufacturer may be "limited" due to the "learned intermediary" doctrine.  Mallinckrodt Br. at 11, n. 2.  However, this case does not involve "products liability". Nowhere does the Amended Complaint allege that Acthar was defective or unreasonably dangerous in the treatment of its FDA-approved conditions. *See, e.g.*, Am. Cmplt. at ¶¶ 63-72 (describing history of Acthar FDA approval for 19 narrow indications).  Consequently, there is no authority for the broad proposition that "[t]his rationale against liability for Mallinckrodt applies here too."  Mallinckrodt Br. at 11, n. 2

### D.   The Amended Complaint States a Claim Under Count II for Negligent Misrepresentation.

Plaintiff's County II states a claim for negligent misrepresentation.  The principal

elements of this cause of action are:

> (1) the defendant, owing a duty of care to the plaintiff, negligently asserts a false statement;
>
> (2) the defendant intends that his statement will be acted upon by the plaintiff;
>
> (3) the defendant has the knowledge that the plaintiff will probably rely on the statement, which, if erroneous, will cause loss or injury;
>
> (4) the plaintiff, justifiably, takes action in reliance on the statement; and
>
> (5) the plaintiff suffers damage proximately caused by the defendant's negligence."

*Smith v. Integral Consulting Servs*., Civil Action No. DKC 14-3094, 2016 U.S. Dist. LEXIS

114692, at *16-17 (D. Md. Aug. 26, 2016)(citing *Lloyd*, 397 Md. at 135-36).

Mallinckrodt mistakenly contends that Plaintiff's negligent misrepresentation claim

"points to the ASAP form as the basis for a duty owed by Mallinckrodt."  (Mallinckrodt Br. at

10).  This is not the case.  Rather, the Amended Complaint establishes that "the Acthar Start

Form materially misrepresents and states falsely that Mallinckrodt is the 'distributor of Acthar.' .

. . The exclusive distributor of Acthar has been CuraScript since 2007". Am. Complt ¶ 404. The

duty alleged in the Amended Complaint was undertaken by Mallinckrodt when it chose to speak

directly to the Plaintiff and its beneficiaries, and it therefore owed the Plaintiff  and its

beneficiaries a duty to speak the truth "through their direct intervention in the treatment decisions

of Plaintiff's beneficiaries through the ASAP, by requiring Plaintiff's beneficiaries to approve of

their treatment with Acthar in advance, and by requiring the beneficiaries' doctors to certify that

the Acthar treatment was medically necessary."  *Id*. at 402.

As stated in the Amended Complaint, Mallinckrodt deceived patients and payors like Plaintiff by making false statements regarding the distribution of Acthar as well as the medical necessity of Acthar.  Am. Complt. ¶¶ 402-407; see also, Am. Cmplt. 10, 17, 18, 25, 29, 37, 180, 181, 183, 186, 197, 199, 208, 213, 214, 229, 235 and 273.  Mallinckrodt promoted materially erroneous statements about both the value mode of action and medical necessity of Acthar.  Maryland case law makes clear that an action for negligent misrepresentation will lie when a defendant who owes a duty of care to the plaintiff "volunteer[s] an erroneous opinion" with the knowledge that plaintiff will rely on it (and the plaintiff does in fact rely on it to his detriment).  *Jones v. Koons Auto., Inc*., 752 F. Supp. 2d 670, 686 (D. Md. 2010)).

Moreover, even if Mallinckrodt somehow did not know that it was making material misrepresentations about Acthar's value mode of action and medical necessity (though it plainly was aware), Plaintiff's claim survives.  "A plaintiff does not have to prove that defendant actually possessed knowledge of the statement's falsity to assert a claim for negligent misrepresentation." *Id*. (citing *Miller v. Fairchild Indus., Inc*., 97 Md.App. 324, 345, 629 A.2d 1293 (1993) ("Even where deliberate falsehood is lacking or cannot be proven, however, a plaintiff may still state a cause of action for negligent misrepresentation." (emphasis in original)).

As Mallinckrodt argues, "[t]he economic loss doctrine represents a judicial refusal to extend tort liability to negligence that causes purely economic harm in the absence of privity, physical injury, or risk of physical injury." *Balfour Beatty Infrastructure, Inc. v. Rummel Klepper & Kahl, LLP*, 451 Md. 600, 155 A.3d 445, 451 (Md. 2017).  Maryland courts have long emphasized that to establish the first element of a negligent misrepresentation claim, a plaintiff must allege a duty that is independent of any contractual obligation. *See, e.g., Martin Marietta*

*Corp. v. Int'l Telecomms. Satellite Org.*, 991 F.2d 94, 98 (4th Cir. 1992).  Here, the relationship between Plaintiff and Mallinckrodt is not contractual, but there is a relationship that is equivalent to an "intimate nexus".  "As a general rule, when the failure to exercise due care creates a risk of economic loss only, and not the risk of personal injury, we have required an 'intimate nexus' between the parties as a condition to the imposition of tort liability.  That 'intimate nexus' may be satisfied by contractual privity, . . . 'or its equivalent.'").  *Swinson v. Lords Landing Village Condo.*, 360 Md. 462, 758 A.2d 1008, 1016 (Md. 2000)(emphasis added). "One 'equivalent' is stated in § 552 of the RESTATEMENT (SECOND) OF TORTS (1965), which, in relevant part, provides that (1) a person who, in the course of its business, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance on that information, if the person fails to exercise reasonable care or competence in obtaining or communicating the information[.] . . . Those principles have been adopted by this Court and are a part of the Maryland law." *Cooper v. Berkshire Life Ins. Co.,* 148 Md. App. 41, 82, 810 A.2d 1045, 1068-69 (2002)(citing *Swinson v. Lords Landing Village Condo.*, 360 Md. 462, 477-78, 758 A.2d 1008 (2000).

Mallinckrodt overlooks the fact that Plaintiff alleges an equivalent intimate nexus by operation of the Restatement.  As alleged in the Amended Complaint, Mallinckrodt owed a duty of care to Plaintiff.

> Defendants here undertook and owed a duty of care to Plaintiff and its beneficiaries through their direct intervention in the treatment decisions of Plaintiff's beneficiaries through the ASAP, by requiring Plaintiff's beneficiaries to approve of their treatment with Acthar in advance, and by requiring the beneficiaries' doctors to certify that the Acthar treatment was "medically necessary".

Am. Cmplt. ¶ 402.  The economic loss doctrine does not bar Plaintiff's claim for negligent misrepresentation.

### E.      The Amended Complaint States a Claim Under Count III for Fraud.

Mallinckrodt also contends that Count III fails to state a claim for fraud because Plaintiff has not pled this claim with particularity.  Mallinckrodt Br. at 14.  In Maryland, however, a "court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Galante v. Ocwen Loan Servicing LLC*, Civil Action No. ELH-13-1939, 2014 U.S. Dist. LEXIS 98049, at *28 (D. Md. July 18, 2014)(quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999)).

As previously established herein, Mallinckrodt's Motion demonstrates its clear understanding of the Amended Complaint.  Furthermore, Mallinckrodt has sought and received discovery in other cases, knowing full-well the nature of its defenses for which it needs discovery.

In Maryland, the elements of fraud are as follows: (1) the defendant made a false representation to the plaintiff, (2) the falsity of the representation was either known to the defendant or the representation was made with reckless indifference to its truth, (3) the misrepresentation was made for the purpose of defrauding the plaintiff, (4) the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) the plaintiff suffered compensable injury as a result of the misrepresentation.  *Ultimate Outdoor Movies, LLC v. Funflicks, LLC*, No. SAG-18-2315, 2019 U.S. Dist. LEXIS 86763, at *41 (D. Md. May 23, 2019)

Mallinckrodt's Motion seeks dismissal of Plaintiff's fraud count in its entirety, but relies solely on two sentences of one paragraph (Am. Cmplt ¶ 414) of a ten-paragraph Count, and ignores the other 436 paragraphs in the detailed Amended Complaint.  While Mallinckrodt

concedes that the Amended Complaint is not identical to the *Rockford* matter, it relies almost entirely on the Rockford decision as its basis for dismissal of Plaintiff's fraud claim here. Mallinckrodt cites no other case, other than another decision dealing with the sale of propane. Mallinckrodt Br. at 15.

While paragraph 414 makes Mallinckrodt aware of the particular circumstances for which it will have to prepare a defense at trial, other paragraphs of the Amended Complaint bolster Plaintiff's fraud claim and satisfy Rule 9(b).

For example. Plaintiff alleges that it "used and relied upon these AWP prices, as set forth in its Cigna contracts, as the amount to pay and/or reimburse for Acthar" (Am. Cmplt ¶ 415); "these prices were artificial prices, unrelated to any actual, reasonable price in the marketplace, or the actual value of Acthar" (Am. Cmplt ¶ 416); and Mallinckrodt "made these false representations about the prices of Acthar with the intent of misleading Plaintiff into relying on the prices as real and fact-based prices" (Am. Cmplt ¶ 417).

Under Rule 9(b), a plaintiff alleging claims that sound in fraud has the burden of describing the "time, place and contents of the false representation, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999)(citations omitted). "The second sentence of Rule 9(b) allows conclusory allegations of defendant's knowledge as to the true facts and of defendant's intent to deceive." *Id.*

Here, the "person" making the false statements is Mallinckrodt, by and through its executives Bailey, Cartt, LaPointe and O'Neill, among others. All of these executives and their false statements are identified in Plaintiff's pleading. Am. Cmplt. ¶¶ 130, 203, 209, 212-215 (Trudeau); ¶¶ 13, 94, 98, 108-109, 121, 126-128, 252, 337, 377 (Bailey); ¶¶ 13, 93-4, 104, 116,

191, 333 (Cartt); ¶¶ 13, 56, 85-87, 92-94, 97, 103-106, 302, 342, 362, 386 (LaPointe); ¶¶ 203-

204 (O'Neill).  The content of the false representations are the inflated AWP's pled throughout

the Amended Complaint.  The "place" of the misrepresentation was a bill sent to Plaintiff

charging the AWP for each administration of Acthar over the course of the last three years.  Am.

Cmplt. at ¶¶ 28-29, 37.  The "time" is each time.  Plaintiff is not required to specify each and

every time it made a payment based on Mallinckrodt's inflated AWPs.  *See, e.g., In re. AWP,*

263 F.Supp. 2d 172, 194 (D.Mass 2003); *In re AWP*, 307 F.Supp. 2d 196, 208 (D.Mass 2004).

### F.    The Amended Complaint States a Claim Under Count IV for Unjust Enrichment.

Count IV of the Amended Complaint adequately pleads a claim for unjust enrichment as

a matter of Maryland law.  "In an action for unjust enrichment the burden is on the plaintiff to

establish that the defendant holds plaintiff's money and that it would be unconscionable for him

to retain it."  *Bank of Am. Corp. v. Gibbons*, 173 Md. App. 261, 268, 918 A.2d 565, 569 (2007)

*Plitt v. Greenberg*, 242 Md. 359, 364, 219 A.2d 237 (1966)

"A person who receives a benefit by reason of an infringement of another person's

interest, or of loss suffered by the other, owes restitution to him in the manner and amount

necessary to prevent unjust enrichment."  *Bank of Am. Corp*., 918 A.2d at 569 (citing *Berry &*

*Gould v. Berry*, 360 Md. 142, 151, 757 A.2d 108 (2000)(quoting Restatement (Second) of

Restitution § 1 (Tentative Draft No. 1, 1983)).

"The restitutionary remedies and unjust enrichment are simply flip sides of the same

coin." *Id.* (quoting *Alternatives Unlimited, Inc. v. New Baltimore City Bd. of School Comm'rs*,

155 Md. App. 415, 454, 843 A.2d 252 (2004).  Therefore, "[r]estitution involves the

disgorgement of unjust enrichment." *Id.* (quoting *Consumer Protection Div. v. Morgan*, 387 Md.

125, 168, 874 A.2d 919 (2005)).

"The doctrine of unjust enrichment is applicable where 'the defendant, upon the circumstances of the case, is obliged by the ties of natural justice and equity to refund the money,' and gives rise to the policy of restitution as a remedy." *Id.* at 267 (quoting *Hill v. Cross Country Settlements, LLC*, 172 Md. App. 350, 914 A.2d 231, 2007 WL 29191, *6 (2007)(citations omitted)). The purpose of restitution, therefore, "is to prevent the defendant's unjust enrichment by recapturing the gains the defendant secured in a transaction." *Id.* (quoting 1 Dan B., Law of Remedies § 4.1(1), at 552 (2d ed. 1993)).

Under Maryland law,"[a] claim of unjust enrichment is established when: (1) the plaintiff confers a benefit upon the defendant; (2) the defendant knows or appreciates the benefit; and (3) the defendant's acceptance or retention of the benefit under the circumstances is such that it would be inequitable to allow the defendant to retain the benefit without the paying of value in return. *Benson v. State*, 389 Md. 615, 651-52, 887 A.2d 525 (2005).

The Amended Complaint explicitly states that, by paying exorbitant, unjustified and artificially inflated AWP-based prices for Acthar, Plaintiff conferred a financial benefit upon Mallinckrodt. Am. Cmplt. ¶¶ 424-425.  The Amended Complaint provides specific detail as to Mallinckrodt's unjust retention of a massive financial benefit from Plaintiff, how the price increase of Acthar from $40.00 in 2001 to over $40,000.00 today.  *Id.* at ¶¶ 17, 25-19, 37, 179-221, 426-427.

### G.    The Amended Complaint States a Claim under Count V for Conspiracy to Defraud/Concerted Action.

Count V of the Amended Complaint charges Defendants with conspiracy to defraud/concert of action with respect to their alleged fraudulent schemes.  Mallinckrodt contends that this claim should be dismissed because "Plaintiff's claim again relies on the same

faulty allegations underlying their fraud claim."  Mallinckrodt Br. at 16.  Mallinckrodt correctly

identifies the requisite elements of common law conspiracy in Maryland as follows:

> 1.      A confederation of two or more persons;
>
> 2.      Some unlawful act done in furtherance of the conspiracy; and
>
> 3.      Actual legal damage resulting to the plaintiff.

*Id.* (citing *Royen v. Lacey*, 277 A.2d 13, 14 (Md. 1971).  But, Mallinckrodt fails to point out how

Plaintiff's Count V fails to plead each of these elements.  *See* Am. Cmplt at ¶¶ 430-436.

"[T]here is no doubt that a plaintiff may plead a conspiracy to commit a tort as an

additional cause of action so long as he or she has plausibly alleged that the defendant committed

overt acts in furtherance of the conspiracy that caused the plaintiff harm."  *Capital Lightning &*

*Supply, LLC v. Wirtz*, 2018 U.S.Dist. LEXIS 140711 (D. Md. Aug. 20, 2018) at *42-43 (citing

*Shenker v. Laureate Educ., Inc*., 411 Md. 317, 983 A.2d 408, 428 (Md. 2009)).  Once a plaintiff

pleads an actionable tort, "[n]othing more is required at this stage in the proceeding."  *Id*. at *45.

Here, the Washington County Board has pled that, "[a]s set forth more fully above [in the

preceding 430 factual and legal averments], beginning at least as early as 2007, the exact date

being unknown to Plaintiff, and continuing thereafter until the present, all Defendants and other

unnamed co-conspirators, between and among themselves and others, entered into an agreement

and/or otherwise engaged in a continuing conspiracy to defraud and deceive Plaintiff by causing

them to pay more for Acthar than they otherwise would have paid in the absence of the

Defendants' conspiracy and concerted action."  Am. Cmplt at ¶ 431.  Plaintiff then alleges seven

(7) distinct overt "acts" of the Defendants, in furtherance of the conspiracy.  These are not just

rote averments; instead, Plaintiff alleges that the Defendants' specific acts include "discussing

and agreeing among themselves and with their co-conspirators" to do all of the following:

(1)     control the prices of Acthar;

(2)     increase the prices of Acthar;

(3)     control the ASAP program materials and website [which] allow[ed] Defendants to conduct their unfair pricing scheme;

(4)     control the exclusive distribution network for Acthar through the ASAP Program;

(5)     rely on employees to promote the ASAP Program through the marketing alleged;

(6)     participate in the affairs of the ASAP Program by using a fraudulent scheme to market and sell Acthar at inflated prices;

(7)     conceal and suppress the truth about the Acthar inflated prices, the monies earned from payors, like Plaintiff, and their exclusive arrangement….

Am. Cmplt. ¶ 432(a) – (g).  There can be no doubt that the details of these overt acts – ie., the inflated AWP prices of Acthar and the ASAP Program – are more than adequately set forth in Plaintiff's pleading.  *See, e.g.,* Am Cmplt. ¶¶ 17, 25-29, 37, 179- 236, 373-377, 396, 406, 409, 414-421, 424 (Acthar AWP price manipulation); 15, 42, 54, 99-100, 148-173, 226, 232, 246, 242, 396, 402-411 (ASAP Program).

Mallinckrodt concedes that it has sufficient notice of Plaintiff's conspiracy claim, as pled. *See, e.g.,* Mallinckrodt Br. at 4 (acknowledging the alleged "exclusive distribution arrangement … includes a patient support program 'Acthar support and Access Program' ('ASAP') which is operated by co-defendant UBC."); 15 (acknowledging fraud claim for AWP price inflation). Nothing more should be required at this juncture.

## III.   <u>CONCLUSION</u>

For the foregoing reasons, Mallinckrodt's Motion to Dismiss should be denied.  In the event this Court were to find Plaintiff's Amended Complaint deficient in any material respect

with respect to any of the claims pled, Plaintiff respectfully requests leave of Court to file an

amended pleading to cure the pleading deficiency.[16]

Dated:  August 12, 2019                                    Respectfully submitted,


                                                           s/Donald E. Haviland, Jr.
                                                           Donald E. Haviland, Jr., Esq.
                                                           (pro hac vice 19-217-PA061219)
                                                           William H. Platt II, Esq.
                                                           (pro hac vice 19-217-PA061219)
                                                           HAVILAND HUGHES
                                                           201 South Maple Way, Suite 110
                                                           Ambler, PA 19002
                                                           (215) 609-4661 Telephone
                                                           (215) 392-4400 Facsimile
                                                           haviland@havilandhughes.com
                                                           platt@havilandhughes.com

                                                           Anthony J. Trotta, Esquire
                                                           TrottAnt@The Board.k12.md.us
                                                           WASHINGTON COUNTY BOARD OF
                                                           EDUCATION
                                                           Chief Legal Counsel
                                                           10435 Downsville Pike
                                                           Hagerstown, MD 21740
                                                           (301) 766-2946 Telephone
                                                           (301) 766-8718 Facsimile
                                                           Attorney ID #8011010386

                                                           *Counsel for Plaintiff, Washington*
                                                           *County Board of Education*

---

[16] *See Laber v. Harvey*, 438 F.3d 426-47 (4th Cir. 2006)("We have interpreted Rule 15(a) to provide that "'leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile.'") (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986) (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)).

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of August, 2019, a true and correct copy of the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*s/ Donald E. Haviland, Jr.*