# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **WASHINGTON COUNTY BOARD OF EDUCATION,** <br><br> Plaintiff, <br><br> v. <br><br> **MALLINCKRODT ARD, INC.,** *et al*. <br><br> Defendants. | **Case No. 1:19-cv-1854** |

# DEFENDANT MALLINCKRODT ARD INC. AND MALLINCKRODT PLC'S REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT PURSUANT TO RULE 12(b)(6)

Mallinckrodt ARD Inc. and Mallinckrodt plc (collectively, "Mallinckrodt") file this Reply in Further Support of their Motion to Dismiss with Prejudice the Amended Complaint ("Complaint" or "Compl") of Plaintiff Washington County Board of Education ("Plaintiff").

## INTRODUCTION

As in its Complaint, Plaintiff spills a great deal of ink in its rambling 30-page Brief in Opposition to Mallinckrodt's Motion to Dismiss (the "Opposition" or "Opp'n"). Nothing in those pages, though, can cure the fact that Plaintiff has not lodged, and cannot lodge, factual accusations with the requisite specificity to plausibly establish a single cause of action. If Plaintiff had a cognizable claim, its path to survive dismissal would be straightforward and easy: specifically identify the false or misleading statements that Mallinckrodt communicated to Plaintiff about Acthar upon which Plaintiff relied that underpin each of its claims, along with the necessary facts demonstrating the inaccurac(ies) so this Court (and Mallinckrodt) can evaluate them. That Plaintiff cannot do so is telling and ultimately fatal to its Complaint. Plaintiff's use of conclusions and generalities, eschewing the basic details of alleged misrepresentations, is not just tactical: it is the best Plaintiff can do here without a basis for its claims.

Mallinckrodt agrees with Plaintiff on this point: "the Court's focus must be on the Amended Complaint." Opp'n at 4. When the Court scrutinizes the Complaint and focuses on the factual allegations actually contained therein—ignoring Plaintiff's conclusions, speculation, and invective—what remains is a set of assertions that describes a perfectly lawful specialty drug distribution system and which utterly fails to describe with particularity any statement or conduct by Mallinckrodt (or any Defendant) that could provide a basis for a cognizable claim. Nor does Plaintiff plead facts from which one could fairly conclude that Plaintiff relied upon any representation of Mallinckrodt in deciding to approve Acthar prescription coverage. Plaintiff's

claims are simply not plausible in view of the factual allegations it musters regardless as to whether Plaintiff's allegations are measured against the heightened pleading standard of Rule 9 or the regular pleading standard of Rule 8.

For all the Complaint's volume and commentary, when distilled, these core allegations form the essential basis for the five claims Plaintiff attempts to state against Mallinckrodt:

- Mallinckrodt "artificially increased the AWPs for Acthar, knowing that those AWPs were false and unconscionably high." Opp'n at 14. *See also* Compl. ¶¶ 17, 25, 28-29, 178-221; Opp'n at 25-26.

- Mallinckrodt "promot[ed] and [sold] Acthar exclusively through the ASAP." Opp'n at 16; Compl. ¶ 396.

- Mallinckrodt failed to "disclose[] the truth about Acthar, including its limited uses and benefits." Opp'n at 16; Compl. ¶ 397; *see also* ("Mallinckrodt deceived patients and payors like Plaintiff by making false statements regarding . . . the medical necessity of Acthar." Opp'n at 22; Compl. ¶¶ 118-22.

- The Acthar start form (the "ASAP Form") "states falsely that Mallinckrodt is the 'distributor of Acthar.'" Opp'n at 21; Compl. ¶ 404.

But Plaintiff, even when now challenged to provide the details needed for its claims to proceed, cannot come forward with the specifics of how Mallinckrodt—or any Defendant—supposedly deceived or misled Plaintiff into deciding to cover the cost of Acthar prescriptions, which physicians deemed appropriate and medically necessary for Plaintiff's beneficiaries and which Plaintiff's pharmacy benefits manager, Cigna, approved. Plaintiff's Opposition relies on block-cites to dozens of legal conclusions instead of identifying the necessary, factually-based misrepresentations and fraudulent statements at issue, ignores altogether certain arguments and controlling authorities advanced by Mallinckrodt, and mischaracterizes the allegations it lodged in the Complaint.

In sum, Plaintiff's new desire to pay less for Acthar (prescribed on the advice of physicians and approved through Cigna) does not give rise to viable claims. The Complaint should be dismissed in its entirety.

## ARGUMENT

Plaintiff's Complaint fails to properly plead the elements of each and every one of its five claims, and the Court should dismiss its Complaint with prejudice.

### I. Plaintiff's Maryland Consumer Protection Act ("MCPA") Claim (Count I) Should Be Dismissed.

This Court should dismiss Plaintiff's MCPA claim as 1) Plaintiff does not allege with specificity any deceptive practice or misrepresentation in connection with Plaintiff's decision to pay for Acthar; and 2) Plaintiff fails to plausibly allege reliance on any misrepresentation. *See Stewart v. Bierman*, 859 F. Supp. 2d 754, 768 (D. Md. 2012) (citing *Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 277 (Md. 2007), *aff'd,* 528 F. App'x 297 (4th Cir. 2013)).

#### A. Plaintiff's MCPA Claim Sounds in Fraud and Must Satisfy Rule 9.

For starters, Plaintiff's efforts to avoid the more stringent Rule 9 pleading requirements are unavailing. Plaintiff posits that since it generically pleaded the magic word "omission" six times in its Complaint, its MCPA claim does not sound in fraud.[1] This ignores the true nature of Plaintiff's Complaint. Plaintiff never argues Mallinckrodt failed to disclose some specified vital information to Plaintiff. Rather, Plaintiff bases its MCPA claim on "false" pricing and "misrepresentations." *See e.g.*, Compl. ¶¶ 23, 118, 189. Those actions must be pleaded with particularity pursuant to Rule 9. *See Haley v. Corcoran*, 659 F. Supp. 2d 714, 724 (D. Md. 2009) (applying heightened pleading standard to MCPA claim). However, even under the less stringent

---

[1] *See* Compl. ¶¶ 8, 390, 393, 395-97 (all legal conclusions, rather than factual allegations, with a number alleging generic deceit based on defendants' "fraud . . . misrepresentation . . . or omission").

Rule 8 pleading standards, none of Plaintiff's four theories are plead properly and state an MCPA claim.

### B. Plaintiff Identifies No Misrepresentation by Mallinckrodt or any Defendant.

While Plaintiff's Opposition is murky, block-citing several dozen paragraphs in the Complaint rather than identifying specific allegations, Plaintiff appears to ground its MCPA claim primarily on two deficient sets of allegations: (i) Defendants inflated and misrepresented Acthar AWPs; and (ii) Defendants made misrepresentations about Acthar's uses, benefits, and effectiveness. Neither set of contentions survives scrutiny.

First, Plaintiff asserts generally that Mallinckrodt "artificially increased the AWPs for Acthar, knowing that those AWPs were false and unconscionably high, causing Plaintiff to overpay for Acthar." Opp'n at 14. Plaintiff summarily alleges that it "was charged prices based upon the AWP for Acthar." Compl. ¶ 28.

Plaintiff offers no Maryland authority for its assertion that "inflated" AWPs can support a MCPA claim. Instead, Plaintiff relies on inapposite decisions from Massachusetts, Mississippi, New York, Pennsylvania, and Wisconsin courts that ruled on different motions and different arguments. *See In re Miss. Medicaid Pharm. Average Wholesale Price Litig,* , 190 So. 3d 829 (Miss. 2015) (not ruling on sufficiency of pleading but on a post-trial motion); *Watson Labs., Inc. v. State*, 241 So. 3d 573 (Miss. 2018) (same); *State v. Abbott Labs.*, 816 N.W.2d 145 (Wis. 2012) (same); *In re Pharm. Indus. Average Wholesale Price Litig.*, 582 F.3d 156 (1st Cir. 2009) (same), *cert. dismissed,* 561 U.S. 1056 (2010); *Commonwealth v. Tap. Pharm. Prod. Inc.*, 36 A.3d 1197 (Pa. Commw. Ct. 2011) (same)*, vacated on other grounds,* 94 A3d. 350 (Pa. 2014); *In re Pharm. Indus. Average Wholesale Price Litig.*, 339 F. Supp. 2d 165, 182 (D. Mass. 2004)

(denying defendant's motion to dismiss because AWPs were "consumer oriented" as defined in the applicable state court statute).[2]

Moreover, several of Plaintiff's authorities actually *dismissed* claims based on AWP pricing where, as here, plaintiffs' pleading was not sufficient. *See In re Pharm. Indus. Average Wholesale Price Litig.*, 263 F. Supp. 2d 172, 194 (D. Mass. 2003) (dismissing claims where plaintiffs "named drugs without a specific fraudulent AWP"); *In re Lupron Mktg. & Sales Practices Litig.*, 295 F. Supp. 2d 148, 182 (D. Mass. 2003) (dismissing fraud claims, ruling "[i]t is not enough to simply aver that plaintiffs 'reasonably relied upon the veracity of [d]efendants regarding AWP'"); *In re Pharm. Indus. Average Wholesale Price Litig.*, MDL No. 1456, 2004 WL 2387125, at *2 (D. Mass. Oct. 26, 2004) (dismissing AWP claims where defendant failed to plead "factual allegations regarding a spread, internal documents or government investigations from which an inference of fraud can reasonably be made."); *but c.f. Pharm. Indus.*, 263 F. Supp. 2d at 178, 194 (denying motion to dismiss where plaintiffs pleaded "the allegedly fraudulent AWP published by a named defendant for that drug," the time and location of the publication, and the DOJ-determined actual AWP for that same period); *Pharm. Indus.*, 2004 WL 2387125, at *2 (denying motion to dismiss where plaintiff pleaded "both the published AWP for a drug and what [plaintiff] believes is an accurate estimate of the actual average wholesale price of the drug").

Similarly here, the Complaint is devoid of details needed to plausibly conclude Mallinckrodt made any misrepresentation to Plaintiff about AWPs. For instance, the Complaint

---

[2] Further, many cases cited by Plaintiff involved government payors, which by law relied on an AWP-based formula. *See Abbott*, 816 N.W.2d at 151 ("Medicaid paid pharmacies AWP minus a specific percentage" and the "percentage remained constant for all brand drugs until the next legislative revision in the biennial budget process"); *In re Miss. Medicaid Pharm.*, 190 So. 3d at 834 (detailing how Mississippi's Medicaid program reimbursed drugs based on AWP).

5

contains no allegations (i) that Plaintiff reviewed AWP pricing for Acthar prior to approving the prescription, (ii) that Plaintiff believed the AWP it reviewed to be the actual, "average wholesale price" for Acthar,[3] (iii) regarding what Plaintiff actually paid for Acthar and when, or (iv) that the published AWP was a substantial factor in its decision to cover its beneficiary's prescription. Plaintiff simply states that at some unspecified point in time it received AWP pricing for Acthar in its *Cigna* contracts—not from Mallinckrodt. Compl. ¶ 415. Plaintiff's allegations do not provide a factual basis to plausibly conclude that the AWP pricing it supposedly reviewed was a false statement of Mallinckrodt.

Second, Plaintiff ties its MCPA claim to the assertion that "Mallinckrodt has misrepresented the value of Acthar to treat the rheumatoid arthritis for which Plaintiff's beneficiaries have been prescribed Acthar" (Opp'n at 17) and points to the following allegation:

> Defendants' misrepresentations and fraudulent omissions were material to Plaintiff. Had Defendants disclosed the truth about Acthar, **including its limited uses and benefits**, and the real reasons for its exorbitant pricing, Plaintiff would not have paid the prices it did for Acthar.

Compl. ¶ 397 (emphasis added); Opp'n at 16, 17-18). However, Plaintiff does not and cannot allege that it received <u>any</u> representation from Mallinckrodt concerning Acthar's uses and benefits or that any such representation was (i) inaccurate or (ii) a substantial factor in Plaintiff's decision to cover the prescriptions its beneficiary's physician deemed appropriate. As Mallinckrodt observed in its Motion, claims about Acthar's effectiveness are of the type rejected in *Moczulski v. Ferring Pharm., Inc.,* Civ. No. JKB-18-1094, 2018 WL 3496433 (D. Md. July 20, 2018)—a case Plaintiff simply ignores, hoping this Court will as well. *Id.* at *8 (dismissing

---

[3] Plaintiff says this only in its blanket legal conclusion offered at Compl. ¶ 414.

plaintiff's claim that defendant drug manufacturers failed to provide accurate information to her about her prescription).[4]

In any event, the allegations in the Complaint regarding misrepresentations about the "limited uses and benefits" of Acthar also fail because they are vague, not specific to Plaintiff, and fail to meet the who, what, and where required under Rule 9. *Compare* Compl. ¶ 118-22, 126-27, 131 *with Currie v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 788, 799 (D. Md. 2013) (finding a MCPA claim sufficiently plead where plaintiffs "alleged both approximate and specific dates for many of the alleged misrepresentations, the content of many of the misrepresentations, the identity of many of the persons making the misrepresentations").

### C. Purported Antitrust Violations Cannot Support an MCPA Claim.

To the extent Plaintiff attempts to base its MCPA claim on the fact that Acthar was brought to market through an alleged exclusive distribution arrangement under the ASAP program, those grievances stem from anticompetitive concerns and do not raise consumer protection issues. *See* Opp'n at 16 (citing to Compl. ¶ 396).[5] Purported antitrust violations cannot support an MCPA claim. *See Davidson v. Microsoft Corp.*, 792 A.2d 336 (Md. Ct. Spec. App. 2002). And, to the extent Plaintiff attempts to plead deception by some sort of "concealed" agreement (Compl. ¶ 14), this allegation is implausible as Plaintiff simultaneous pleads that

---

[4] And, the *Moczulski* court was not unique in dismissing such claims. *See also Zafarana v. Pfizer, Inc.*, 724 F. Supp. 2d 545, 556 (E.D. Pa. 2010) (dismissing a similar New Jersey consumer protection claim as the medication had been prescribed by physicians and plaintiffs failed to plead "any facts that make it plausible that a less expensive [medication] would have been prescribed").

[5] Paragraph 396 states: "Plaintiff would not have paid for the Acthar at the inflated AWP prices set by Defendants had Defendants not engaged in deception, fraud, false premise, misrepresentation, knowing concealment, suppression, and/or omission of material facts *in their marketing, promotion and sale of Acthar exclusively through the ASAP*." (emphasis added)

Mallinckrodt did not hide this exclusive distribution agreement but announced it publicly in 2007. Compl. ¶ 90, Ex. B.

### D. Plaintiff Alleges No Facts Supporting That it Plausibly Relied on any Statement or Representation by Mallinckrodt or any Defendant.

Not only has Plaintiff not pleaded any inaccurate statement or misrepresentation that can form the basis of MCPA claim, Plaintiff does not and cannot plead facts plausibly establishing it relied on any such statement when deciding whether to repeatedly pay for Acthar at the (undefined) price that it apparently paid over some unspecified period time during the past several years. Maryland law is clear that where a plaintiff fails to plead reliance, its MCPA claim must be dismissed. *See Farwell v. Story*, No. CIV.A. DKC 10-1274, 2010 WL 4963008, at \*9 (D. Md. Dec. 1, 2010) (dismissing MCPA claim and ruling that "[a]bsent an allegation of reliance, it cannot simply be assumed here, where there is at least some possibility that [plaintiff] was a 'complicit or willing purchaser'").

Plaintiff cites to *Nails v. S&R, Inc.* for the proposition that the "averment of 'but for' causation is sufficient under Maryland law at this stage." Opp'n at 17. However, *Nails* does not support this statement; instead *Nails*, on a post-trial motion, ruled that to submit a fraud claim to the jury, plaintiff must set forth facts demonstrating that "the misrepresentation substantially induced the plaintiff to act." 639 A.2d 660, 669 (Md. 1994) (finding sufficient evidence to submit to a jury where dealership withheld information about plaintiffs' commission payouts prior to plaintiffs agreed to the employment terms). This is simply not the case in the matter before the Court; Plaintiff has yet to connect a single statement by Mallinckrodt to Plaintiff's decision to cover its beneficiary's Acthar, much less plausibly stating and asserting factual information demonstrating that Plaintiff substantially relied on that statement when choosing to purchase Acthar multiple times over the past couple of years. *See Farwell*, 2010 WL 4963008, at

\*8 (requiring an "identifiable loss, measured by the amount the consumer spent or lost as a result of his or her reliance on the sellers' misrepresentation").

\*   \*   \*

In sum, Plaintiff's various legal conclusions do not plead a claim under the MCPA. Indeed, Plaintiff's recently filed supplemental authority only emphasizes why this case should be dismissed. *See* Pl.'s Notice of Supp. Authority, Ex. A, ECF No. 71. In that North Carolina district court opinion, plaintiffs argued violation of the MCPA, among other similar state statutes, because the consumers "were charged the list price [for certain lab services], which they alleged is grossly too high, without any prior agreement as to price." *Anderson, et al. v. Lab. Corp. of Am. Holdings*, No. 1:17cv193, at p. 3 (M.D.N.C. Aug. 16, 2019). The court apparently rejected plaintiffs' original complaint where plaintiffs had only alleged an excessive price (*id.* at 21), but then found plaintiffs stated a claim where they alleged defendant "decline[d] to disclose its prices to patients until they have already received services." *Id.* at 23. This is not the case here. Plaintiff knew the prices it was paying for Acthar before it agreed to be obligated to pay them and does not, and cannot, allege otherwise. Plaintiff has not pleaded an MCPA claim, and Count I should be dismissed.

## II.     **Plaintiff's Negligent Misrepresentation Claim (Count II) Should Be Dismissed.**

Plaintiff's negligent misrepresentation claim alleges the same flawed theories found in its MCPA claim and suffers similar defects. In its Opposition, Plaintiff claims "Mallinckrodt deceived patients and payors like Plaintiff by making false statements regarding the distribution of Acthar as well as the medical necessity of Acthar." Opp'n at 22. Tellingly, rather than identify any such false statements, Plaintiff block cites to 24 paragraphs in the Complaint—none of which provide the necessary detail.

First, Plaintiff tries to ground its negligent misrepresentation claim with the ASAP Form and points to the entirely irrelevant contention that the form "states falsely that Mallinckrodt is the 'distributor of Acthar.'" Opp'n at 21; Compl. ¶ 404. Plaintiff asserts this constitutes Mallinckrodt's choice "to speak directly to the Plaintiff and its beneficiaries" and Mallinckrodt's "direct intervention in the treatment decisions of Plaintiff's beneficiaries through the ASAP." Opp'n at 21; Compl. ¶¶ 402, 404.[6] Plaintiff somehow expects this Court to believe that a portion of the ASAP Form regarding distributor identity compelled Plaintiff to approve its employee's Acthar prescription—despite the fact that Plaintiff never alleged that it even reviewed the employee's ASAP Form in connection with reimbursements for Acthar. This argument is not only implausible, it's nonsensical. *See ShoMe Techs., Inc. v. Nobska Grp., LLC*, 190 F. App'x 298, 301 (4th Cir. 2006) (affirming dismissal of negligent misrepresentation claim where plaintiff "failed to show that it reasonably relied on [defendant's letter]").

Second, as addressed in Section I.B. above, Plaintiff's allegations are devoid of facts showing Mallinckrodt made <u>any</u> statements regarding "the medical necessity of Acthar"—much less statements to Plaintiff that Plaintiff then plausibly relied on in any way in deciding to pay for its employees' drug coverage and at the price Plaintiff agreed to pay. Nor did Mallinckrodt "volunteer an erroneous opinion" regarding Acthar. *Compare* Opp'n at 22 *with Jones v. Koons Auto, Inc.*, 752 F. Supp. 2d 670, 686 (D. Md. 2010) (refusing to dismiss plaintiff's claim where plaintiff pleaded that defendant sold plaintiff a car while withholding important information about the car's history).

---

[6] Further, this legal conclusion is implausible as Plaintiff also pleads that Questor publicly announced in 2007 that CuraScript SD would be the exclusive distributor of Acthar. *See* Compl. ¶ 90, Ex. B.

Count III fails for the independent reason that Mallinckrodt owed no duty to Plaintiff and nothing in the Opposition alters this conclusion. Plaintiff waffles on the source of the duty it claims Mallinckrodt owed it, alternatively disavowing the ASAP Form as the source of the duty, while simultaneously pointing to allegations discussing (entirely benign) things that are accomplished through the ASAP Form (e.g. doctor certification of Acthar's medical necessity; requiring patient and doctor approval for Acthar in advance of receiving Acthar, etc.). *See* Compl. ¶ 166. Plaintiff's assertion that Mallinckrodt thus "chose to speak directly to the Plaintiff and its beneficiaries" and directly intervened "in the treatment decisions of Plaintiff's beneficiaries" strains all credulity. Opp'n at 21. As noted above, the ASAP Form was administrative paperwork completed by a patient's physician.

Plaintiff's claim also fails for lack of reliance, as discussed above. The notion that Plaintiff relied on the ASAP form and that this form proximately caused Plaintiff to decide to pay for Acthar lacks seriousness. *See ShoMe Tech.*, 190 F. App'x at 301 (ruling as a matter of law that plaintiff failed to show it reasonably relied on defendant's letter when it chose not to seek alternative investors). And to the extent Plaintiff is referring to other instances where Mallinckrodt "spoke directly to Plaintiff's beneficiaries," the Complaint is devoid of such facts.[7]

Finally, Plaintiff's assertion that Mallinckrodt and Plaintiff shared an intimate nexus sufficient to give rise to a duty as required under Maryland law is not supported by plausible factual allegation and fares no better. *See Snyder v. Cynosure, Inc.*, No. 18-cv-2049, 2019 WL 1386727, at *4 (D. Md. Mar. 27, 2019) (dismissing pursuant to the economic loss doctrine where plaintiff failed to allege defendant owed a duty). Plaintiff cites no case finding an intimate nexus

---

[7] Instead Plaintiff alleges that it contracted with Cigna and paid Cigna for Acthar. Compl. ¶ 10; *see also* Compl. ¶ 27 ("Plaintiff contracted with Cigna for the medical benefits of its employees" and "Cigna utilizes Tel-Drug for the distribution of specialty drugs, like Acthar.").

11

where plaintiff did not interact directly with defendant because Maryland law does not support such a claim. *See Day v. United Bank*, No. CV PX-16-975, 2018 WL 3707833, at *7 (D. Md. Aug. 3, 2018) (dismissing where "no customer relationship or any other contract-like relationship" existed between the parties). In fact, Plaintiff's cited authorities serve to highlight why this lack of direct contact necessitates dismissal of its claim. In *Swinson v. Lords Landing Village Condo.*, the court did not specifically rule on whether the intimate nexus was satisfied but found relevant that defendant was "under a public duty, imposed by statute, to provide that information." 758 A.2d 1008, 1016 (Md. 2000). And, in *Cooper v. Berskshire Life Ins. Co.*, the court found an intimate nexus where plaintiff made a purchase of life insurance from defendant. 810 A.2d 1045, 1049, 1070 (Md. Ct. Spec. App. 2002). Both of these cases involve relationships and circumstances not present here.

### III. Plaintiff's Fraud Claim (Count III) Falls Well Short of the Rule 9 Particularity Requirements.

The Complaint lacks factual allegations stating "the time, place, and contents of [] false representations, as well as the identity of the person making the misrepresentation." *Bancroft Commercial, Inc. v. Goroff*, No. CIV. CCB-14-2796, 2014 WL 7409489, at *4 (D. Md. Dec. 31, 2014) (quoting *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 781 (4th Cir. 2013)) (dismissing where Plaintiff failed to adequately plead fraud). And separately, as with its other claims, Plaintiff entirely fails to plead facts plausibly showing it reasonably relied upon any alleged misrepresentation. *See Green v. Wells Fargo Bank, N.A.*, 927 F. Supp. 2d 244, 257 (D. Md. 2013) ("Because Plaintiffs have failed to show that they relied on Defendant's alleged misrepresentations to their detriment, their claims under the MCPA, for common law fraud, and for promissory estoppel will be dismissed."), *aff'd,* 582 F. App'x 246 (4th Cir. 2014).

Plaintiff seems to acknowledge the lack of particularity in its Complaint, bizarrely opening its fraud argument not by identifying any fraudulent statements with particularity, but by suggesting Mallinckrodt's instant Motion in this case and discovery "Mallinckrodt sought and received [] in other [unspecified] cases" demonstrates Mallinckrodt knows "the nature of its defenses for which it needs discovery." Opp'n at 24. This is, of course, entirely irrelevant to whether Plaintiff has carried its pleading burden, which it has not. Plaintiff further cites ¶ 414 of its Complaint for the "particular circumstances for which [Mallinckrodt] will have to prepare a defense at trial" (Opp'n at 25), even though that paragraph contains none of the Rule 9 allegations as to the who, what, and when of the fraudulent conduct:

> In setting the inflated, AWP-based prices for Acthar, which prices Plaintiff paid, the Defendants made material misrepresentations that those prices represented the purported "average" of "wholesale prices" for Acthar, or some price reasonably related thereto, which they did not. Defendants also misrepresented that the inflated AWP prices for Acthar represented the actual value of the product in the marketplace, which they did not.

Comp. ¶ 414.[8] Those "material misrepresentations" alleged in ¶ 414 are never articulated in the Complaint, despite Plaintiff's extensive citations on pages 25 and 26 of the Opposition.

Aware it cannot specifically identify any fraudulent statements, Plaintiff cobbles together its closing paragraph on fraud by saying: "the 'person' making the false statements is Mallinckrodt, by and through its executives Bailey, Cartt, LaPointe and O'Neill, among others"; the "content of the false representations are the inflated AWPs"; and the "time" and "place" of

---

[8] This may in itself be implausible as noted by the Pennsylvania Supreme Court: "By 1991, there was a wealth of information available to state officials and to the public at large confirming that AWPs served as a 'list' or 'book' price, so that the term 'average wholesale price' was (or had become) a misnomer." *Commonwealth v. TAP Pharm. Prod., Inc.*, 94 A.3d 350, 353 (Pa. 2014).

each "misrepresentation" is every time Plaintiff received a bill for Acthar." Opp'n at 25-26.[9] This theory is facially defective in its own right. But, Plaintiff also overreaches in describing its allegations. For instance:

- The vast majority of the paragraphs cited to regarding "executives and their false statements" **do not identify any statement** made by an executive. *Contrast* Opp'n at 25-26 *with* Compl. ¶¶ 13, 56, 85-87, 92-94, 97-98, 103, 105-06, 108-09, 121, 128, 191, 203, 209, 213-15, 342, 362, 386.

- Plaintiff **fails to sufficiently plead that any statements are false**. *Contrast* Opp'n at 25-26 *with* Compl. ¶¶ 104, 116, 126-27, 130, 204, 252, 302, 333, 337, 377.

- Plaintiff does **not plead it heard or relied on any statement** prior to purchasing Acthar. *Contrast* Opp'n at 25-26 *with* Compl. ¶¶ 104, 116, 126-27, 130, 204, 212, 252, 302, 333, 337, 377.

- **Plaintiff never states that it received a bill in its Complaint**. *Contrast* Opp'n at 26 *with* Compl. ¶¶ 28-29, 37. And, when Plaintiff describes the overall Acthar distribution program, it alleges that the hypothetical patient "authorizes Express Scripts [and not Mallinckrodt] to bill the payor for Acthar." *Contrast* Opp'n at 26 *with* Compl. ¶ 152.

As demonstrated above, the Complaint is rife with legal conclusions, lacks any particularized factual basis for Plaintiff's fraud claim, and fails to plausibly demonstrate reliance by Plaintiff in deciding to cover Acthar. The Court should dismiss Count III.

---

[9] In this regard, Plaintiff appears to double-down on its defective "prices as fraud" theory. In doing so, Plaintiff wholly ignores the cases cited by Mallinckrodt rejecting such a theory—including the Rockford Action in which Plaintiff's counsel's identical theory based on the same core set of facts was squarely rejected at the pleading stage. *City of Rockford v. Mallinckrodt ARD, Inc.*, 360 F. Supp. 3d 730, 776-77 (N.D. Ill. 2019), *reconsideration denied,* 2019 WL 2763181 (N.D. Ill. May 3, 2019).

**IV.     Plaintiff' Claim for Unjust Enrichment (Count IV) Should Be Dismissed.**

Plaintiff's Opposition does not argue with clear Maryland law: where a plaintiff's unjust enrichment claim is premised on a fraud claim and the underlying fraud claim is dismissed, the unjust enrichment claim must be dismissed as well. *See State Farm. Mut. Auto. Ins. Co. v. Carefree Land Chiropractic, LLC*, No. 18-cv-1279, 2018 WL 6514797, at *4 (D. Md. Dec. 11, 2018) (dismissing unjust enrichment claim where fraud claim was dismissed); *see also* Opp'n at 25-26 (failing to rebut this argument). Instead, Plaintiff simply ignores that body of law altogether in the hopes this Court will similarly overlook it. But Plaintiff's unjust enrichment claim is expressly based on the same allegedly fraudulent actions underlying its fraud claim in Count III (*compare* Compl. ¶¶ 414-16 *with* Compl. ¶¶ 426-28). This Court should dismiss Count IV along with Count III of the Complaint.

**V.     Plaintiff Pleads No Cognizable Claim for Conspiracy to Defraud/Concerted Action (Count V).**

Plaintiff's Complaint fails to plead a claim for conspiracy to defraud, which requires: (1) a confederation of two or more persons; (2) some unlawful act done in furtherance of the conspiracy; and (3) actual legal damage resulting to the plaintiff. *Van Royen v. Lacey*, 277 A.2d 13, 14 (Md. 1971). As conceded in Plaintiff's Opposition, its claim relies on the same faulty allegations underlying its fraud claim. *See* Opp'n at 28 (noting that "a plaintiff may plead a conspiracy to commit a tort as an additional cause of action so long as he or she has plausibly alleged that defendant committed overt acts in furtherance of the conspiracy"). Plaintiff has not pleaded a conspiracy to defraud because Plaintiff has not plausibly alleged the underlying fraud; its claim for conspiracy should necessarily be dismissed as well. *E.g. Hill v. Brush Engineered Materials, Inc.*, 383 F. Supp. 2d 814, 824 (D. Md. 2005) ("unless and until Plaintiff's fraudulent concealment claim is rehabilitated, the conspiracy claims must be dismissed because they lack an

underlying tort"); *see also City of Rockford v. Mallinckrodt ARD, Inc.*, 360 F. Supp. 3d 730, 777 (N.D. Ill. 2019) ("Because plaintiffs have not met their pleading requirements under Rule 9(b) for alleging fraud, plaintiffs' conspiracy to defraud claims must be dismissed as well"); *Zafarana v. Pfizer, Inc.*, 724 F. Supp. 2d 545, 559-60 (E.D. Pa. 2010) (dismissing conspiracy claims where underlying allegations failed).

## CONCLUSION

For the reasons stated above and in the Defendants' other briefing in support of their motions to dismiss, the Court should dismiss Plaintiff Washington County Board of Education's Amended Complaint in its entirety with prejudice.

Dated: August 26, 2019                                  Respectfully Submitted,

*/s/ Philip D. Bartz*
Philip D. Bartz (D.Md. #12344)
Bryan J. Harrison (D.Md. #19165)
**BRYAN CAVE LEIGHTON PAISNER LLP**
1155 F Street, NW Suite 700
Washington, DC 20004
(202) 508-6010
phillip.bartz@bclplaw.com
bryan.harrison@bclplaw.com

G. Patrick Watson
    (Admitted *pro hac vice*)
Lindsay Sklar Johnson
    (Admitted *pro hac vice*)
**BRYAN CAVE LEIGHTON PAISNER LLP**
One Atlantic Center, 14th Floor
1201 W. Peachtree St., NW
Atlanta, GA 30309
(404) 572-6600
patrick.watson@bclplaw.com
lindsay.johnson@bclplaw.com

        Herbert R. Giorgio, Jr.
          (Admitted *pro hac vice*)
        **BRYAN CAVE LEIGHTON PAISNER LLP**
        One Metropolitan Square
        211 North Broadway, Suite 3600
        St. Louis, MO 63102
        (314) 259-2000
        herb.giorgio@bclplaw.com

        *Attorneys for Defendants Mallinckrodt ARD*
        *Inc. and Mallinckrodt plc*

## **CERTIFICATE OF SERVICE**

I certify that on August 26, 2019, the foregoing was filed via the Court's CM/ECF system and served on all counsel of record.

*/s/ Philip D. Bartz*
Philip D. Bartz
